Benjamin C. Durham, Esq.
Nevada Bar No. 7684
BENJAMIN DURHAM LAW FIRM
601 S 10th St.
Las Vegas, Nevada 89101
(702) 631-6111
*Attorney for Plaintiff*
*Ghassan Houbous Bouari*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GHASSAN HOUBOUS BOUARI, | Case No.: |
| Plaintiff, | |
| vs. | **CIVIL RIGHTS COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| UNITED STATES OF AMERICA; FBI SA CHARLES RO; FBI SA DENNIS LAO; FBI SA ELENA IATAROLA; DOE INDIVIDUALS 1-20, jointly and severally; and ROE CORPORATIONS 1-20 jointly and severally, | |
| Defendant(s), | |

Comes Now the Plaintiff, GHASSAN HOUBOUS BOUARI, by and through counsel, BENJAMIN C. DURHAM, and for his claims for relief against Defendants, and each of them jointly and severally, based upon knowledge, information and reasonable belief derived therefrom, alleges, complains, and states as follows:

# I.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' causes of action arising under 42 U.S.C. § 1983, 1988, and due to the deprivation of rights and privileges secured to Plaintiff under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

2. This Court has the authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, and under its inherent equitable powers.

3. Venue is proper under 28 U.S.C. §§ 1402(b) and 1391(b)(2) because a substantial portion of the events giving rise to the claims alleged in this Complaint arose within the District of Nevada in the Counties of Clark and Nye.

# II.

## PARTIES

4. Plaintiff GHASSAN HOUBOUS BOUARI is an individual residing in Miami, Florida.

5. Defendant CHARLES RO is an individual sued herein for money damages in his individual and official capacity. Defendant was at all times herein conducting himself under color of legal authority in connection with his position as an agent with the Federal Bureau of Investigations.

6. Defendant DENNIS LAO is an individual sued herein for money damages in his individual and official capacity. Defendant was at all times herein conducting himself under color of legal authority in connection with his position as an agent with the Federal Bureau of Investigations.

7.  Defendant ELENA IATAROLA is an individual sued herein for money damages in her individual and official capacity. Defendant was at all times herein conducting herself under color of legal authority in connection with her position as a supervisory agent with the Federal Bureau of Investigations.

8.  Defendant UNITED STATES OF AMERICA is a public government entity with a principal place of business in Washington, D.C. UNITED STATES OF AMERICA employed the following defendants herein, and is liable for the conduct of their employees: Special Agent CHARLES RO, Special Agent DENNIS LAO, and Supervisory Special Agent ELENA IATAROLA.

9.  The true names, identities or capacities, whether individual, corporate, political, associate or otherwise of the Defendants herein designated as DOES 1-20, inclusive, are unknown to Plaintiff at this time — and include without limitation employees, agents, contractors and/or servants of the UNITED STATES OF AMERICA — who therefore sue these Defendants by such fictitious names. Plaintiff is informed, believes, and thereon alleges that each of the fictitiously named DOES are legally responsible, either intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby legally caused the injuries, damages, and violations and/or deprivation of rights hereinafter alleged. Plaintiff requests leave of the Court to amend this Complaint and insert the true names and capacities of said fictitiously named Defendants when the same have been ascertained.

10. The true names, identities or capacities, whether individual, corporate, political, associate or otherwise of the Defendants herein designated as ROE CORPORATIONS 1-20, inclusive, are unknown to Plaintiff at this time, who therefore sue these Defendants by

such fictitious names. Plaintiff is informed, believes, and thereon alleges that each of these ROE CORPORATIONS are legally responsible, either intentionally, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby legally caused the injuries, damages, and violations and/or deprivation of rights hereinafter alleged. Plaintiff requests leave of the Court to amend this Complaint and insert the true names and capacities of said fictitiously named Defendants when the same have been ascertained.

11. The reason why Plaintiff is ignorant of the true names and capacities of Defendants herein sued as DOES and ROE CORPORATIONS is that the same have been unascertainable as the date of the filing of this Complaint, due to the fact that these DOES and ROE CORPORATIONS may be employees, agents, contractors and/or representatives of Defendants UNITED STATES OF AMERICA and/or other federal political entities. As such, many records of these individuals are protected and can only be ascertained through the discovery process.

12. Plaintiff is informed, believes, and thereon alleges that each of the Defendants were at all material times an agent, servant, employee, partner, joint venturer, contractor, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, were acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged. At all material times, each Defendant was

jointly engaged in tortious activity, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

13. At all material times, each Defendant acted under the color of the laws, statutes, ordinances, regulations and rules of the UNITED STATES OF AMERICA.

14. This Complaint may be pled in the alternative pursuant to Fed.R.Civ.P 8(d)(2).

### III.

### PRELIMINARY STATEMENT

15. In February 2016, GHASSAN HOUBOUS BOUARI, a foreign national legally working and residing in the United States in accordance with a visa granted pursuant to the E-2 Treaty Investor program, was indicted and arrested for allegedly participating in a money laundering scheme. The money laundering scheme that Mr. Houbous was alleged to be involved in was a reverse sting operation undertaken by the Federal Bureau of Investigation in early 2014 that targeted Mr. Houbous' brother, Emile Bouari. Essentially, Mr. Houbous was accused of participating and/or aiding and abetting one instance of money laundering that occurred on August 20, 2015, in the amount of $60,000, in Miami, Florida. In addition, Mr. Houbous was accused of conspiring to commit money laundering, in the amount of $590,000, beginning in March 2014 and continuing to the date of indictment, with the listed co-conspirators Emile Edward Bouari, Kimberly Ann Milko and Mary Diane Green. All charges were alleged to be in violation of 18 U.S.C. §§ 1956(a)(3)(A) and (B) or 1956(h). On February 6, 2016 Mr. Houbous was persuaded to travel from Miami to Las Vegas to meet with defendant Special Agent DENNIS LAO, acting in an undercover capacity, who represented that he was interested in investing in Mr. Houbous' weight loss business. Agent Lao provided

the airline ticket for this travel. Upon arriving at the airport in Las Vegas, Mr. Houbous was held at gunpoint, handcuffed and placed under arrest. He was strip-searched, subjected to interrogation, and told his situation was "bad" due to him not being a US citizen. Due to false statements relating to the underlying allegations, Mr. Houbous was denied bond. Mr. Houbous spent the next eighteen months detained at the Nevada Southern Detention Center, a private contract facility utilized by the US Marshal Service. Mr. Houbous suffered substantially due to this detention. His business, which was integral to retaining his E-2 Investment Treaty visa, suffered irreparable harm. His E-2 visa was revoked due to the allegations made in the indictment. Additionally, Mr. Houbous was alienated from his wife and infant son, who were visiting family in Turkey at the time of his arrest and were unable to return to the United States while Mr. Houbous, who was their sole provider, was detained pending trial.

16. The charges, however, were false, malicious, and entirely fabricated. Mr. Houbous never participated in nor aided and abetted any money laundering activity. That allegation resulted directly from the actions of both lead case agent, defendant FBI Special Agent Charles Ro, and defendant FBI Special Agent Dennis Lao, who was acting in an undercover capacity. Both agents intentionally, knowingly, and recklessly made false statements and representations and material omissions of facts in their reports, affidavits, and other communications with federal prosecutors, thereby initiating a malicious prosecution of Mr. Houbous.

17. Before the Indictment was sought and returned, defendants Ro and Lao knew or recklessly disregarded the fact that Mr. Houbous never participated in any money laundering activity as defined by U.S.C. § 1956(a)(3)(A), which requires that a

representation must be made that involved funds are proceeds of a specified unlawful activity, and that "The representation must be made by or authorized by a Federal officer with authority to investigate or prosecute money laundering violations." (See US Attorney Manual CRM 2101). Defendants Ro and Lao also knew or recklessly disregarded the fact that they had represented themselves to Mr. Houbous as legitimate businessmen looking to expand their business interests into Florida.

18. Defendants Ro and Lao falsely informed prosecutors that Mr. Houbous had participated in and/or aided and abetting a money laundering transaction where Mr. Houbous had been informed that the funds were derived from a specified unlawful activity. Defendants Ro and Lao also falsely testified to the grand jury that Mr. Houbous had participated in and/or aided and abetting a money laundering transaction where Mr. Houbous had been informed that the funds were derived from a specified unlawful activity.

19. Mr. Houbous brought action to dismiss the indictment against him, filing a Motion to Dismiss Due to Outrageous Government Conduct on May 15, 2017.

20. The basis of the prosecution of Mr. Houbous was false and collapsed by its own wrongful weight, with the Indictment against Mr. Houbous being dismissed on the government's motion on August 18, 2017.

21. This is an action for money damages, declaratory, and injunctive relief brought under the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988, and the doctrine of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for the defendants' malicious prosecution of and fabrication of evidence regarding Mr. Houbous in violation of the Fourth, Fifth and Fourteenth Amendments; unlawful search and seizure of Mr. Houbous' private papers, communications and

7

belongings in violation of his Fourth Amendment rights; unlawful seizure of Mr.

Houbous' person, beginning on February 6, 2015 and continuing to his release on August

18, 2017, in violation of his Fourth Amendment rights; the defendants' fabrication of

evidence which resulted in Mr. Houbous being detained without Due Process, in violation

of his Fourteenth Amendment rights; and racial and ethnic profiling in violation of Mr.

Houbous' Equal Protection and Due Process rights.

22. This action is also brought under the Federal Tort Claims Act for the torts of malicious

prosecution, invasion of privacy, negligent and intentional infliction of emotional

distress, and negligence committed by federal employees and agents against Mr.

Houbous.

## IV.

## FACTUAL ALLEGATIONS

### A.  The Indictment

23. On or about February 3, 2016, a Grand Jury in the District of Nevada returned an

Indictment charging Mr. Houbous with two counts of money laundering.

24. The indictment *falsely* alleged that Mr. Houbous had participated in and/or aided abetted

a money laundering transaction on August 20, 2015 and *falsely* alleged that Mr. Houbous

had participated in a conspiracy to launder money beginning in May 2014, continuing to

the date of the indictment.

25. Count 12 of indictment falsely alleged that Mr. Houbous "did knowingly conduct and

attempt to conduct a financial transaction…involving property *represented by a federal*

*law enforcement officer to be the proceeds of a specified unlawful activity*…to wit:

monies and funds derived from narcotics trafficking…and from transporting, recruiting

and harboring and causing the transportation recruiting and harboring of persons for commercial sex acts."

26. Count 13 of the indictment falsely alleged that Mr. Houbous "did knowingly combine, conspire, confederate, and agree with each other…to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 to wit: with the intent to promote the carrying on of specified unlawful activity, and the intent to conceal and disguise the nature, location, source, ownership and control of property believed to be proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct financial transactions, in and affecting interstate commerce, involving property *represented by a federal law enforcement officer to be the proceeds of specified unlawful activities* and property used to conduct and facilitate specified unlawful activities…"

27. In fact, Mr. Houbous never participated in any money laundering activity.

**B.  The Arrest of Mr. Houbous**

28. On February 6, 2016, in the early evening, Mr. Houbous arrived at the Las Vegas airport at the request of defendant Lao, who requested to meet with Mr. Houbous under the guise of investing in Mr. Houbous' weight loss company. Defendant Lao provided the plane ticket for Mr. Houbous' travel.

29. Upon deplaning in Las Vegas, Mr. Houbous was held at gunpoint by agents of the FBI and told to lay prone on the ground. Mr. Houbous was handcuffed and mirandized.

30. Mr. Houbous was transported to Henderson City jail, where he was subjected to a strip search, mug shot and fingerprinting. Mr. Houbous was held in Henderson from early Saturday morning until Monday morning.

31. On Monday February 8, 2016, Mr. Houbous was transferred to the custody of the United States Marshals Service and transported to the Federal Courthouse in Las Vegas, Nevada for both an initial appearance and a detention hearing.

32. At his initial appearance before a Magistrate Judge on February 8, 2016, Mr. Houbous pled not guilty to both counts of the indictment. The government moved to have Mr. Houbous detained, and he was remanded to custody pending trial.

33. Mr. Houbous' arrest was publicized in local national media, including but not limited to, the Las Vegas Review Journal. The prosecution and media coverage caused Mr. Houbous to be falsely portrayed as an individual involved in criminal behavior including drug trafficking and sex trafficking.

### C.  The Detention of Mr. Houbous

34. Mr. Houbous was detained at the Henderson City Jail from February 6, 2016 to February 8, 2016. Beginning on February 8, 2016 and continuing to his release on August 18, 2017, Mr. Houbous was held at the Nevada Southern Detention Center "NSDC" in Pahrump, Nevada, a private prison contracted by the US Marshal Service that is operated by Core Civic.

35. This illegal seizure of Mr. Houbous' person lasted for 560 days.

36. While at NSDC, Mr. Houbous was repeatedly subjected to restrictions of his personal liberties, including but not limited to: strip searches; limited contact with his wife and child, which included no opportunity for contact visitation; and surveillance of both his incoming and outgoing mail.

37. While at NSDC, Mr. Houbous was housed with individuals who were in both pre-trial and post-conviction status. This included individuals charged with armed robbery and

10

murder, and specifically included one individual who returned from sentencing with a life sentence.

38. While at NSDC, Mr. Houbous was housed with members of at least ten different gangs, both street and prison based. These include, but are not limited to, Surenos, Nazi Low Riders, Outlaw Nazi Skinheads, Bloods, Crips, Gerson Park Kingsmen, Latin Kings, and Aryan Warriors.

39. Mr. Houbous was unable to effectively manage the day-to-day operations of his Miami and New Jersey based weight loss businesses while detained. As a result, these businesses declined to the point of becoming unprofitable.

40. Mr. Houbous' E-2 Investment Treaty visa, which required a substantial investment on Mr. Houbous' part to obtain, was summarily revoked during the period he was detained.

41.  Mr. Houbous' ultimate release was delayed nine days. The order to dismiss the indictment was issued by District Court Judge James C. Mahan on August 9, 2017. Mr. Houbous was released on August 18, 2017.

### D.  Dismissal of the Indictment

42. The allegations of criminal wrongdoing in the Indictment were flatly false.

43. Mr. Houbous did not, as alleged in the Indictment, commit, nor conspire to commit, money laundering in violation of federal law. To the contrary, Mr. Houbous resisted multiple attempts by agents in the undercover operation to involve him in a money laundering scheme that was wholly conceived of, and created by, government agents.

44. The government agents involved in the undercover operation represented themselves to Mr. Houbous as men with the desire to expand their legitimate business interests into Miami, Florida, where Mr. Houbous lived.

11

45. The allegations in the Indictment that Mr. Houbous conducted, attempted to conduct, aided and abetting, or conspired to conduct a financial transaction involving property (funds) represented by federal law enforcement officers to be proceeds of specified unlawful activity were false.

46. The allegations in the Indictment that Mr. Houbous conspired to promote the carrying on of a specified unlawful activity, with the intent to conceal and disguise the nature, location, source, ownership and control property believed to be the proceeds of specified unlawful activity are false.

47. Plainly stated, Mr. Houbous never knowingly participated in any money laundering transaction, nor was he aware of the details of the activity of his brother or the two other members of the alleged conspiracy. At no time was Mr. Houbous made aware that the transactions involved funds or property purported to be derived from illegal activities.

48. After Mr. Houbous, his defense attorney, and his investigator presented this information to prosecuting authorities, the Indictment was dismissed on the government's motion on August 9, 2017.

**E.  The Faulty Investigation**

49. The information presented to prosecuting authorities by Mr. Houbous, his counsel, and his investigator was, in fact, already known or recklessly disregarded by Defendant LAO, who was the undercover FBI agent involved in the investigation, and Defendant RO, who was the FBI lead case agent in the investigation that led directly to the false charges against Mr. Houbous.

50. Defendants LAO and RO intentionally, knowingly and/or recklessly made or caused to be made false statements and representations and material omissions of facts in their

reports, affidavits, and other communications with federal prosecutors, thereby initiating

a malicious prosecution of Mr. Houbous, as evidenced by the false allegations made in

the Indictment and false testimony given by Defendant's LAO and/or RO before the

Grand Jury.

51. Defendants LAO and RO intentional, knowing and/or reckless false statements and

representations and material omissions of fact include:

    **a.** The false assertion that Mr. Houbous participated in a money laundering

    transaction on August 20, 2015.

    **b.** The false assertion that Mr. Houbous was made aware, by federal law

    enforcement officers, that the financial transactions undertook by other members

    of the alleged conspiracy involved property that was proceeds of a specified

    unlawful activity.

    **c.** The false assertion that Mr. Houbous discussed with Defendant LAO the prospect

    of opening prostitution parlors in Florida.

    **d.** The false assertion that Mr. Houbous proposed to recruit Asian, Latin or Russian

    women to act as commercial sex workers.

    **e.** The false assertion that defendant's business holdings constituted an integral part

    of the mechanism used to launder approximately $590,000 in funds believed by

    Mr. Houbous to have been the proceeds derived from narcotics trafficking and

    from transporting, recruiting, and harboring persons for commercial sex acts.

52. Defendants LAO and RO intentionally, knowingly, and/or recklessly undertook an

undercover operation targeting Mr. Houbous to participate in an illegal scheme that was

wholly conceived of and created by the Defendant's LAO and RO, without any

13

individualized suspicion that Mr. Houbous was involved, or predisposed to be involved, in illegal activity.

53. Defendants LAO and RO intentionally, knowingly, and/or recklessly undertook an undercover operation targeting Mr. Houbous to participate in an illegal scheme that was wholly conceived of and created by the government, when Mr. Houbous had no criminal characteristics known to Defendants LAO and RO that would suggest that Mr. Houbous would be predisposed to participate in illegal money laundering activities.

54. The actions of Defendants LAO and RO in intentionally, knowingly and/or recklessly providing false information to federal prosecutors and in failing to provide evidence of a clearly exculpatory nature, was done with the intent and purpose of initiating a malicious prosecution of Mr. Houbous, and these communications in fact led directly to the false indictment and prosecution.

55. Defendants LAO and RO intentionally, knowingly and/or recklessly provided of false information and deliberate and/or reckless falsifications and withholding of exculpatory evidence which caused the revocation of Mr. Houbous' E-2 Investment Treaty Visa.

56. As evidenced by statements made indicating that Defendants involved in the undercover operation sought to "kick his ass back to where he came from," referring to Mr. Houbous, Defendant's LAO, RO, and DOES considered Mr. Houbous' race and ethnicity in providing false information and withholding exculpatory evidence from prosecutors with the intent to secure false charges against Mr. Houbous and/or in an effort to revoke Mr. Houbous' E-2 Treaty Investment Visa and get him deported.

57. Upon information and belief, the DOE and ROE defendants assisted and cooperated with Defendant's LAO and RO in the activities described above and knowingly and/or

14

recklessly made false statements and representations and material omissions of facts in relevant affidavits and/or communications with federal prosecutors, thus leading to the wrongful prosecution of Mr. Houbous.

58. At all times relevant to this Complaint, the conduct of Defendants LAO, RO, DOES and ROES was extreme and outrageous and was in willful, reckless and callous disregard of the Plaintiffs' rights under federal and state law.

59. The actions of Defendant's LAO, RO, DOES and ROES were in violation of a duty of care owed to Plaintiff.

60. The actions of Defendant's LAO, RO, DOES and ROES constituted a crime, actual fraud, actual malice and/or willful misconduct.

### F.  Injuries to Mr. Houbous

61. As a direct and proximate result of the conduct of Defendants LAO, RO, DOES and ROES, Mr. Houbous suffered substantial damages, including loss of liberty, invasion of privacy, substantial emotional distress and harm, loss of reputation, and physical harms caused by the emotional distress, including difficulty sleeping, nightmare, difficulty focusing on daily tasks, and changed behavior in work practices. In addition, Mr. Houbous has suffered substantial economic damage, including loss of income and loss of future earnings, and costs of expenses in defending against false criminal charges.

62. Mr. Houbous feared that this criminal prosecution would result in his wrongful conviction and the destruction of all Mr. Houbous had built and established in his personal and professional lives.

63. Mr. Houbous is in fear of additional repercussions in the form of other actions by the government, including but not limited to removal from the United States and alienation from his minor child, who is a United States citizen.

64. Defendants caused the search and/or seizure without probable cause of the personal belongings, including the computers, other electronic devices, and private papers, of Mr. Houbous, thereby depriving him of the use of these belongings and subjecting him to broad invasions of his private information.

65. The malicious prosecution of Mr. Houbous proximately caused harm to Mr. Houbous' professional pursuits and career and have and will continue to have an adverse impact on his professional career.

66. As a result of the malicious prosecution and arrest, Mr. Houbous' E-2 Treaty Investment Visa was revoked, putting Mr. Houbous at risk of being subjected to removal proceedings.

67. Because of the prosecution, Mr. Houbous fears that engaging in lawful activities related to his business could result in further false prosecution.

68. The malicious prosecution and related events prejudice and will continue to prejudice Mr. Houbous with respect to future business opportunities within the United States and abroad and thus will adversely impact his future earnings.

69. As a result of Defendants' actions, Mr. Houbous suffered from severe emotional trauma and distress. Some of his injuries manifested themselves immediately and physically in loss of appetite, difficulty sleeping, and physical and mental exhaustion. He suffered from difficulty concentrating, lack of patience, and shortness of temper. These injuries are ongoing and continuous.

# V.

# CLAIMS

### Count I
**Plaintiff Ghassan Houbous Bouari v. Defendants Lao, Ro, Iatarola, Doe(s) and Roe(s)**
**Federal Constitutional Claim – Malicious Prosecution and Fabrication of Evidence**

70. The actions of Defendants LAO, RO, IATAROLA, DOES and ROES violated Mr.

Houbous' clearly established right to be free from malicious prosecution and the

fabrication of evidence under the Fourth and Fifth Amendments.

71. As the lead case agent and investigator, Defendant RO initiated the prosecution of Mr.

Houbous, did so without probable cause and acted with improper motives and purposes.

72. Mr. Houbous suffered a deprivation of liberty as a result of the prosecution. The charges

against Mr. Houbous were dismissed prior to trial and, therefore, terminated favorably to

Mr. Houbous.

### Count II
**Plaintiff Ghassan Houbous Bouari v. Defendants Lao, Ro, Iatarola, Doe(s) and Roe(s)**
**Federal Constitutional Claim – Equal Protection and Due Process Violation**

73. The actions of Defendants LAO, RO, IATAROLA, DOES and ROES violated Mr.

Houbous' clearly established equal protection and due process rights under the Fifth and

Fourteenth Amendments.

74. Defendant Ro's investigation and initiation of prosecution against Mr. Houbous were

based on impermissible racial and ethnic factors, specifically of Mr. Houbous Chilean

and Lebanese ethnicity, and his status as a resident pursuant to the E-2 Treaty Investor

Visa program.

17

75. Defendant Ro's intentionally, knowingly and/or recklessly providing of false information and deliberate and/or reckless falsifications and withholding of exculpatory evidence caused Mr. Houbous to be detained for 570 days without due process.

### Count III
**Plaintiff Ghassan Houbous Bouari v. Defendants Lao, Ro, Iatarola, Doe(s) and Roe(s)**
**Federal Constitutional Claim – Unlawful Search and Seizure of Property and Belongings**

76. Defendants LAO, RO, IATAROLA, DOES and ROES caused a search of the person and belongings of Mr. Houbous without probable cause, thereby violating his clearly established constitutional rights under the Fourth Amendment.

### Count IV
**Plaintiff Ghassan Houbous Bouari v. Defendants Lao, Ro, Iatarola, Doe(s) and Roe(s)**
**Federal Constitutional Claim – Unlawful Seizure of Mr. Houbous' Person**

77. Defendants LAO, RO, IATAROLA, DOES and ROES caused a seizure of the person of Mr. Houbous without probable cause, thereby violating his clearly established constitutional rights under the Fourth Amendment. This seizure began on February 6, 2016 and ended on August 18, 2017, a total of 560 days.

78. Defendants LAO, RO, IATAROLA, DOES and ROES made, or caused to be made, knowingly and recklessly false statements and representations or material omissions of facts in statements to federal prosecutors and testimony to a Grand Jury which led to the seizure and detention of Mr. Houbous for 560 days.

/ / /

/ / /

18

**Count V**
**Plaintiff Ghassan Houbous Bouari v. Defendant United States of America**
**Federal Torts Claim Act – Malicious Prosecution**

79. Through their actions, Defendants LAO, RO, IATAROLA, DOES and ROES initiated the prosecution of Mr. Houbous without probable cause and with malice. This constituted the tort of malicious prosecution under the laws of the State of Nevada.

80. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

**Count VI**
**Plaintiff Ghassan Houbous Bouari v. Defendant United States of America**
**Federal Torts Claim Act – Intentional Infliction of Emotional Distress**

81. The actions of Defendants LAO, RO, IATAROLA, DOES and ROES in causing the malicious prosecution of Mr. Houbous, in causing the invasion of Mr. Houbous privacy, in targeting Mr. Houbous partly on the basis of race and ethnicity, in causing the detention of Mr. Houbous for 560 days, and in causing the revocation of Mr. Houbous E-2 Treaty Investor Visa were outrageous and extreme. Defendants LAO, RO, IATAROLA, DOES and ROES acted intentionally or recklessly, and their actions caused Plaintiff severe emotional distress that manifested itself in physical symptoms.

82. The actions of Defendants LAO, RO, DOES and ROES constituted the tort of intentional infliction of emotional distress under the laws of the State of Nevada.

83. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

**Count VII**
**Plaintiff Ghassan Houbous Bouari v. Defendant United States of America**
**Federal Torts Claim Act – Negligent Infliction of Emotional Distress**

84. Defendants LAO, RO, IATAROLA DOES and ROES owed a duty of due care to Mr. Houbous. The actions of Defendants LAO, RO, IATAROLA, DOES and ROES in causing the malicious prosecution of Mr. Houbous, in causing the invasion of Mr. Houbous privacy, in targeting Mr. Houbous partly on the basis of race and ethnicity, in causing the detention of Mr. Houbous for 560 days, and in causing the revocation of Mr. Houbous E-2 Treaty Investor Visa violated that duty of due care and were a direct and proximate cause and substantial factor in the Plaintiff suffering from severe emotional distress that manifested itself in physical symptoms.

85. The actions of Defendants LAO, RO, IATAROLA, DOES and ROES constituted the tort of negligent infliction of emotional distress under the laws of the State of Nevada.

86. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

**Count VIII**
**Plaintiff Ghassan Houbous Bouari v. Defendant United States of America**
**Federal Torts Claim Act – Negligence**

87. Defendants LAO, RO, IATAROLA, DOES and ROES owed a duty of due care to Mr. Houbous. Their actions as described above violated that duty of care and were a direct and proximate cause and a substantial factor in Plaintiffs' injuries as described above.

88. Defendants LAO, RO, IATAROLA, DOES and ROES' actions constituted the tort of negligence under the laws of the State of Nevada.

89. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.

**Count IX**
**Plaintiff Ghassan Houbous Bouari v. Defendant United States of America**
**Federal Torts Claim Act – Invasion of Privacy – False Light**

90. The actions of Defendants LAO, RO, IATAROLA, DOES, ROES and other employees of the United States caused the public placement of Mr. Houbous in a false light. Their actions caused him to be falsely portrayed as a criminal in the local and national media, a label that is highly offensive to any reasonable person. Defendants LAO, RO, IATAROLA, DOES and ROES and other employees of the United States had knowledge and/or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Mr. Houbous would be placed.

91. The actions of Defendants LAO, RO, IATAROLA, DOES, ROEs and other employees of the United States constituted the tort of false light and invasion of privacy under the laws of the State of Nevada.

92. Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions.


Wherefore, Plaintiff GHASSAN HOUBOUS BOUARI respectfully requests:

A. Compensatory damages as to defendants Ro, Lao, Iatarola, Doe(s), Roe(s), and the United States;

B. Punitive damages as to defendants Ro, Lao, Iatarola, Doe(s), and Roe(s);

C. A declaration that defendants violated the Fourth, Fifth and Fourteenth Amendment rights of plaintiff by depriving Mr. Houbous of equal protection under the law, by subjecting Mr. Houbous to a malicious prosecution, by subjecting Mr. Houbous to be detained for 560 days without due process, and by subjecting Mr. Houbous to unlawful searches and seizures;

D. Reasonable attorneys' fees and costs as to all defendants;

E. Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial.


BENJAMIN DURHAM LAW FIRM


*/s/ Benjamin Durham*

By: _____

Benjamin C. Durham, Esq.
Nevada Bar No. 7684
601 S. 10th St., Suite 101
Las Vegas, Nevada 89101
(702) 631-6111
bdurham@vegasdefense.com

*Attorney for Plaintiff*
*Ghassan Houbous Bouari*

22