SIEGMUND F. FUCHS
Senior Trial Attorney, Torts Branch
D.C. Bar No. 986828
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044-7146
Telephone: (202) 616-4322
Email: siegmund.f.fuchs@usdoj.gov

*Attorney for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GHASSAN HOUBOUS BOUARI,     ) | Case No: 2:18-cv-00219-JCM-BNW |
|             Plaintiff,     ) | |
|     v.            ) | |
|             ) | |
| UNITED STATES OF AMERICA, FBI SA   ) | **MOTION TO DISMISS** |
| CHARLES RO; FBI SA DENNIS LAO; FBI  ) | |
| SA ELENA IATAROLA,     ) | |
|             ) | |
|             Defendants.     ) | |

The United States of America moves to dismiss this action brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and §§ 2671-2680, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is based on the following Memorandum of Points and Authorities.

Respectfully submitted this 2nd day of October 2020.

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

ANDREA W. MCCARTHY
Senior Trial Counsel
Torts Branch, Civil Division

*/s/ Siegmund F. Fuchs*
SIEGMUND F. FUCHS
Senior Trial Attorney
Torts Branch, Civil Division

## MEMORANDUM OF POINTS OF AUTHORITIES

## I.    INTRODUCTION

This suit arises out of a two-year money laundering investigation, culminating with a grand jury finding probable cause to indict Plaintiff on (1) one count of money laundering and aiding and abetting; and (2) one count of conspiracy to commit money laundering. Early in the criminal case, the United States dismissed Plaintiff and he subsequently filed this lawsuit. As relevant here, he pleads five state tort claims (Counts Five, Six, Seven, Eight, and Nine) against the United States of America under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and §§ 2671-2680. This Court should dismiss all five claims for three reasons. _First_, this Court lacks subject matter jurisdiction over the FTCA claims because Plaintiff filed suit prior to exhausting his administrative remedies. _Second_, this Court lacks subject matter jurisdiction over the FTCA claims because of the discretionary function and intentional tort exceptions to FTCA liability. _Third_, Plaintiff fails to state claims upon which relief can be granted. Additionally, this Court should dismiss the request for declaratory and injunctive relief against the United States because the United States has not consented to being sued for such relief under the cited statutes.

## II.    BACKGROUND

Plaintiff Ghassan Houbous Bouari brings this suit arising out of his arrest and prosecution for his alleged participation in a money-laundering scheme. Complaint ("Compl.") ¶ 15. He filed suit against the United States of America; two Special Agents for the Federal Bureau of Investigation (FBI): Charles Ro and Dennis Lao; and FBI Supervisory Special Agent Elena Iatarola. _Id._ ¶¶ 5-8. This motion deals only with the FTCA claims against the United States.

According to the complaint, the FBI undertook a reverse sting operation first targeting Plaintiff's brother, Emile Bouari, for money laundering. _Id._ ¶ 15. As Plaintiff acknowledged in the criminal case, the investigation eventually targeted over 20 individuals, with four ultimately indicted. _See_ Reply to Government's Response to Motion to Dismiss, _United States v. Bouari_, No. 16-cr-32 (D. Nev.) (ECF 106, at 9:18-19). Plaintiff himself was a temporary resident alien, but as he also acknowledged in the criminal case, the investigation targeted U.S. citizens as well. _Id._ at 5:21-23. On February 3, 2016, Plaintiff was indicted for his alleged participation, along

with his brother, his brother's girlfriend (Kimberly Ann Milko), and his brother's assistant (Mary Diane Green). Compl. ¶¶ 15, 23. Specifically, he was indicted on (1) one count for money laundering $60,000 on August 20, 2015, in Miami, Florida, and aiding and abetting (Count Twelve of the indictment); and (2) one count for conspiracy to commit money laundering, in the amount of $590,000, beginning in March 2014 and continuing to the date of the indictment (Count Thirteen of the indictment). *Id.* ¶ 15; *see also* Indictment, *Bouari*, No. 16-cr-32 (D. Nev.) (ECF 1).

A warrant for his arrest issued on February 3, 3016, and he was arrested three days later. *Id.* ¶¶ 28- 29. He initially appeared on February 8, 2016, and this Court ordered him detained. *Id.* ¶¶ 31-32. On August 9, 2017, based on the government's own motion, this Court dismissed Plaintiff from the criminal case, and he was released on August 18, 2017. *Id.* ¶ 41. On November 27, 2017, Plaintiff filed a motion for a certificate of innocence, which this Court denied, stating that "[t]he government's dismissal of an indictment is not tantamount to a finding of innocence regarding the underlying charges." Order, *Bouari*, No. 16-cr-32 (D. Nev.) (ECF 123).[1]

Based on the allegation that the charges against him "were false, malicious, and entirely fabricated," Compl. ¶ 16, Plaintiff alleges five FTCA claims against the United States: (1) malicious prosecution (Count Five); (2) intentional infliction of emotional distress (IIED) (Count Six); (3) negligent infliction of emotional distress (NIED) (Count Seven); (4) negligence (Count Eight); and (9) invasion of privacy/false light (Count Nine). All five claims should be dismissed.

## III.    STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint that "lack[s] . . . subject-matter jurisdiction." A Rule 12(b)(1) attack "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In a facial challenge, the movant argues the allegations asserted in the complaint are "insufficient on their face to invoke federal jurisdiction." *Id.* The court accepts the

---

[1] Not all of these facts appear in the complaint, but it is well settled that Rule 201 of the Federal Rules of Evidence permits a court to take judicial notice of undisputed matters of public record, including documents and records on file in federal court. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see also* Fed. R. Evid. 201.

allegations as true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a factual attack, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Safe Air*, 373 F.3d at 1039. The party asserting jurisdiction has the burden of proof. *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1151 (9th Cir. 2017).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Graham-Sultz v. Clainos*, 756 F.3d 724, 748 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When ruling on a motion to dismiss, courts "take all of the factual allegations in the complaint as true, [they] are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted). "Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). Finally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

## IV.   ARGUMENT

### A.   This Court lacks subject matter jurisdiction over the FTCA claims because Plaintiff filed suit prior to exhausting his administrative remedies.

The FTCA is a limited waiver of sovereign immunity, providing a remedy against the United States for the torts of its officers and employees while acting within the scope of their employment. *United States v. Orleans*, 425 U.S. 807, 813 (1976). Although the United States waived its sovereign immunity through the FTCA, it can only be sued in accordance with the terms of that waiver. *Id.* at 814; *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984). An FTCA action shall not be instituted against the United States unless the claimant has exhausted administrative remedies. *See Vacek v. USPS*, 447 F.3d 1248, 1250 (9th Cir. 2006); 28 U.S.C. § 2675(a). The Ninth Circuit has repeatedly held that the exhaustion procedures are "jurisdictional in nature and must be interpreted strictly." *Id.*; *Johnson v. United States*, 704 F.2d 1431, 1442 (9th Cir. 1983). "We are not allowed to proceed in the absence of fulfillment of the conditions merely because dismissal would visit a harsh result upon the plaintiff." *Id.* (citations omitted).

With respect to those procedures and timing, the FTCA provides, in pertinent part:

> An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). In short, "[t]he plaintiff is permitted to sue the United States *only* after the claim is denied or six months have elapsed without final disposition by the agency." *Warren v. DOI BLM*, 724 F.2d 776, 778 (9th Cir. 1984) (emphasis added).

Here, Plaintiff never alleges that he exhausted his administrative remedies prior to filing suit. In fact, he alleges nothing about the filing of an administrative claim at all. Thus, as a facial matter, the complaint fails. It also fails as a factual matter. Plaintiff submitted his administrative claim on February 5, 2018. *See* 10/02/20 Declaration of Kimberly Y. Nettles and Attachment (attached as Exhibit 1). Instead of waiting for the administrative claim to be denied or waiting the requisite six months, Plaintiff filed this lawsuit on the very next day. *Compare id. with* Compl. Because he failed to exhaust his administrative remedies *before* filing this lawsuit, this Court lacks jurisdiction over all FTCA claims against the United States and they must be dismissed.

Although the six-month period has since expired, filing suit prior to the expiration of the six-month period and then simply waiting for that date to arrive does not save the FTCA claims. Indeed, in *McNeil v. United States*, 508 U.S. 106, 107 (1993), the Supreme Court specifically addressed "whether such an action may be maintained when the claimant failed to exhaust his administrative remedies prior to filing suit, but did so before substantial progress was made in the litigation." *Id.* In other words, *McNeil* addressed the precise issue raised here: what to do when an FTCA claim "[i]s filed too early." *Id.* at 111. The Court's answer was unequivocal: by filing suit in federal court before exhausting administrative remedies, "[the] petitioner failed to heed [the FTCA's] clear statutory command, [and] the District Court properly dismissed his suit." *Id.* at 113. The Court recognized the potential harshness of this rule, but noted:

> Every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions. Although the burden may be slight in an individual case, the

5

> statute governs the processing of a vast multitude of claims. The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command.

*Id.* at 112. The Court further explained, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id.* at 113 (citation omitted).

*McNeil* requires dismissal here. *See also Jerves v. United States*, 966 F.2d 517, 518-20 (9th Cir. 1992) (upholding dismissal of FTCA claim filed five months after plaintiff filed administrative claim); *Pesnell v. United States*, 64 F. App'x 73, 74 (9th Cir. 2003) (upholding dismissal of FTCA claim filed two months after plaintiff filed administrative claim); *Wiens v. U.S. Veterans Hosp.*, No. 17-1672, 2017 U.S. Dist. LEXIS 186386, *4-5 (E.D. Cal. Nov. 7, 2017) (dismissing FTCA claim filed four months after plaintiff filed administrative claim); *Watson v. United States*, No. 16-608, 2017 U.S. Dist. LEXIS 104853, *10-11 (D. Nev. July 6, 2017) (dismissing FTCA claim filed 18 days after plaintiff filed administrative claim). Further, an amendment to the complaint cannot cure this defect. As one district court explained:

> If the claimant is permitted to bring suit prematurely and simply amend his complaint after denial of the administrative claim, the exhaustion requirement would be rendered meaningless. Because § 2675(a) of the FTCA requires that an administrative claim be finalized at the time the complaint is filed, plaintiff's complaint cannot be cured through amendment, but instead, plaintiff must file a new suit. This Court lacks subject matter jurisdiction over the present action, which was commenced before the exhaustion requirement under § 2675(a) was satisfied.

*Sparrow v. USPS*, 825 F. Supp. 252, 255 (E.D. Cal. 1993). This Court should follow *Sparrow*, particularly in light of the Ninth Circuit's repeated admonition that "the exhaustion requirement is jurisdictional in nature and must be interpreted strictly." *Vacek*, 447 F.3d at 1250. Thus, this Court should dismiss all five FTCA claims for lack of subject matter jurisdiction.

**B.    This Court lacks subject matter jurisdiction over the FTCA claims because of the discretionary function and intentional tort exceptions to FTCA liability.**

**1.    The discretionary function exception bars all five state tort claims.**

Although the FTCA waives the sovereign immunity of the United States for certain damages actions based on the negligence and other wrongful acts or omissions by federal employees, it is limited by several exceptions, including the discretionary function exception. *See Arteaga-Ruiz v. United States*, 705 F. App'x 597, 598 (9th Cir. 2017) (citations omitted); *see*

6

*also* 28 U.S.C. § 2680(a). Under that exception, the United States retains its sovereign immunity for acts that were (1) discretionary; and (2) based on considerations of public policy. *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). An act is "discretionary" if it retains an element of judgment or choice. *See Green v. United States*, 630 F.3d 1245, 1249 (9th Cir. 2011). Here, the Ninth Circuit is replete with cases holding that how federal officers conduct their investigations, including how they design undercover sting operations, is both discretionary and based on considerations of public policy; and thus, such conduct cannot form the basis for FTCA liability. *See, e.g.*, *Arteaga-Ruiz*, 705 F. App'x at 598 ("[A] federal investigation 'clearly require[s] investigative officers to consider relevant political and social circumstances in making decisions about the [investigation's] nature and scope.") (quoting *Sabow v. United States*, 93 F.3d 1445, 1453 (9th Cir. 1996), *as amended* (Sept. 26, 1996)); *Gonzalez v. United State*s, 814 F.3d 1022, 1032 (9th Cir. 2016) ("The investigation of crime involves policy judgments at the core of the executive branch."); *Dupris v. McDonald*, 554 F. App'x 570, 573 (9th Cir. 2014) ("We have further noted that investigations by federal officers include the type of policy judgments protected by the discretionary function test."); *see also Suter v. United States*, 441 F.3d 306, 312 (4th Cir. 2006) ("We agree with the core principle articulated by the Eighth and Ninth Circuits – that discretionary, policy-based decisions concerning undercover operations are protected from civil liability by the discretionary function exception, even when those decisions result in harm to innocent third parties.") (citing *Frigard v. United States*, 862 F.2d 201, 203 (9th Cir. 1988) (per curiam)); *Patty v. United States*, No. 13-3173, 2015 U.S. Dist. LEXIS 54871, *28 (S.D. Tex. Apr. 27, 2015) ("Courts have consistently held that covert law-enforcement operations . . . are susceptible to policy analysis and covered by the discretionary function exception."); *Woods v. United States*, No. 07-593, 2007 U.S. Dist. LEXIS 80931, *12 (D.N.J. Oct. 31, 20007) ("The conduct involved in an undercover investigation involves the kind of policy-based considerations that are central to the discretionary function exception."). Thus, to the extent Plaintiff's state tort claims purport to challenge the decision to investigate him or any of the tactical decisions underlying the investigation itself, the discretionary function exception bars this Court from considering that conduct in determining whether a state tort was committed.

1    The same applies to any state tort claim based on the decision to prosecute. Like the

2    decision to investigate, "[t]he decision whether or not to prosecute a given individual is a

3    discretionary function for which the United States is immune from liability." *Gen. Dynamics*

4    *Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) (citation omitted); *see also Gray v.*

5    *Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983) ("Prosecutorial decisions as to whether, when and

6    against whom to initiate prosecution are quintessential examples of governmental discretion in

7    enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune

8    under the discretionary function exception."). The Ninth Circuit had previously held that the

9    discretionary function exception applies only to decisions *by prosecutors* to initiate a criminal

10   proceeding. *See Wright v. United States*, 719 F.2d 1032, 1035 (9th Cir. 1983) (stating that the

11   conduct of a law enforcement officer "in implementing that decision . . . both before and after

12   that decision . . . including the nature of his testimony before the grand jury, is not immune").

13   Subsequent Ninth Circuit precedent has held that *Wright* was wrongly decided:

> Our holding in *Wright* relied on a distinction between the "planning level" and the
> "operational level" of decision-making. This dichotomy assumed that decisions
> made by actors at the "operational level" were not immune from liability. The
> Supreme Court and this court subsequently rejected this dichotomy as "specious."
> Rather, an act is shielded from liability if judicial second-guessing would interfere
> with the federal employee's exercise of independent policy judgments.

18   *Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994) (citations omitted). Instead, *Gasho*

19   made clear that the investigation and pursuit of criminal charges *by law enforcement* is also

20   protected by the discretionary function exception. *Id.*; *see also Linder v. United States*, 937 F.3d

21   1087, 1089 (7th Cir. 2019) (noting the circuit split as to whether discretionary function exception

22   applies to bar malicious prosecution claims and citing the Ninth Circuit as saying yes). "That the

23   conduct of the agents may be tortious or motivated by something other than law enforcement is

24   beside the point, as governmental immunity is preserved 'whether or not the discretion involved

25   be abused.'" *Id.* (quoting 28 U.S.C. § 2680(a)). And as *all five tort claims* here rise and fall on

26   the decision to investigate and prosecute, the discretionary function exception precludes FTCA

27   liability, regardless of the labels Plaintiff uses to assert his claims. *See id.* at 1435-36 (dismissing

28   IIED claim based on initiation of proceedings as barred by discretionary function exception).

8

Additionally, a portion of the IIED, NIED, and negligence claims purports to challenge the decision to revoke Plaintiff's visa. Compl. ¶¶ 81, 84; *see also id.* ¶ 87 (challenging the "actions as described above"). Visa decisions are inherently discretionary and based on public policy considerations. *See* 8 C.F.R. § 214.2(e)(23)(ix) ("A grant of E-2 CNMI Investor status is a discretionary determination, and the application may be denied for failure of the applicant to demonstrate eligibility or for other good cause."); *Harrington v. United States*, 748 F. Supp. 919, 931 (D.P.R. 1990) ("Unquestionably, all matters related to the determination of when, how and under what conditions foreign nationals are to be allowed to remain within our borders clearly involve both social and political policy."). Thus, the discretionary function exception also applies to bar the IIED, NIED, and negligence claims to the extent they challenge any visa decision.

### 2. The FTCA does not waive subject matter jurisdiction over false light / invasion of privacy claims.

The FTCA also preserves the sovereign immunity of the United States for any claim "arising out of" certain enumerated torts. 28 U.S.C. § 2680(h). This preservation of immunity is called the "intentional tort exception." *Millbrook v. United States*, 569 U.S. 50, 52 (2013). Three torts over which the United States retains its immunity are slander, libel, and misrepresentation. 28 U.S.C. § 2680(h). However, labels do not dictate what the intentional tort exception covers. *Thomas-Lazear v. FBI*, 851 F.2d 1202, 1207 (9th Cir. 1988). Instead, the exception broadly covers any and all conduct "arising out of" those enumerated torts. 28 U.S.C. § 2680(h). For example, one cannot circumvent the intentional tort exception by labeling a misrepresentation claim as one for negligence, where the allegation is that the officers failed to use due care in obtaining and communicating information. *See United States v. Neustadt*, 366 U.S. 696, 702-08 (1961). Rather, the conduct arose out of a misrepresentation and was barred. *Id.* Similarly, one cannot simply label a slander claim as one for NIED, where the allegation is that the officers failed to foresee the effect their slander had in causing distress, and survive the intentional tort exception. *See Thomas-Lazear*, 851 F.2d at 1206-07. Rather, the conduct arose out of a slander and was barred. *Id.* Here, Count Nine alleges a false light / invasion of privacy claim. Courts, including the Ninth Circuit, have routinely held that the intentional tort exception bars such claims because they arise out of the libel, slander, and misrepresentation exception to FTCA

1  liability. *See Adams v. United States*, 188 F. App'x 571, 571 (9th Cir. 2006); *Oliveira v. United*

2  *States*, No. 16-2925, 2017 U.S. Dist. LEXIS 116916, *8 (D. Ariz. July 26, 2017); *Lorenzo v.*

3  *United States*, 719 F. Supp. 2d 1208, 1213 (S.D. Cal. 2010); *Gordon v. Duncan*, No. 09-1319,

4  2010 U.S. Dist. LEXIS 34948, *37 (D. Ore. Feb. 11, 2010). This Court should accordingly

5  dismiss Count Nine for lack of subject matter jurisdiction, as well as the IIED, NIED, and

6  negligence claims to the extent they assert "causing an invasion of privacy" as a basis for

7  liability. *See* Compl. ¶¶ 81, 84; *see also id.* ¶ 87 (challenging the "actions as described above").

8  **C.    Plaintiff fails to state claims upon which relief can be granted.**

9       **1.    The IIED, NIED, and negligence claims, to the extent they rely on certain
             predicate acts (Nos. 1, 2, 4, and 5), should be dismissed as duplicative.**

10       Counts Six, Seven, and Eight allege IIED, NIED, and negligence claims, all arising out of

11  five predicate acts: (1) causing a malicious prosecution; (2) causing an invasion of privacy; (3)

12  targeting Plaintiff for his race and ethnicity; (4) causing Plaintiff's detention; and (5) causing the

13  revocation of Plaintiff's visa. Compl. ¶¶ 81, 84, 87.[2] Four of these predicate acts (Nos. 1, 2, 4,

14  and 5) are duplicative of other pleaded claims and should be dismissed. *See Cuc Dang v. Sutter's*

15  *Place, Inc.*, No. 10-2181, 2010 U.S. Dist. LEXIS 124875, *16-17 (N.D. Cal. Nov. 24, 2010)

16  (dismissing tort claim as duplicative where claim is "wholly predicated on the conduct forming

17  the basis of plaintiff's other tort claims"); *Golden v. West Corp.*, No. 11-0182, 2012 U.S. Dist.

18  LEXIS 15262, *9 (E.D. Wash. Feb. 8, 2012) ("Since double recovery is not permissible for

19  claims arising out of the same facts, duplicative claims must be dismissed.").

20       To start, Predicate No. 4 (causing a detention) is duplicative of Predicate No. 1 (causing a

21  malicious prosecution). That is because Plaintiff was at all times detained pursuant to process,

22  not before. Compl. ¶¶ 23, 28 (alleging that Plaintiff was arrested pursuant to warrant following

23

---

24  [2] The negligence claim alleges that the "actions as described above" breached a duty of care and
25  caused Plaintiff's injuries. Compl. ¶ 87. The United States presumes the "actions as described
    above" refer to the predicate acts alleged in the IIED and NIED claims. If that is not the case, the
26  negligence claim is subject to dismissal for failing to place the United States on sufficient notice
    to defend itself. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Federal Rule of Civil
27  Procedure 8(a)(2) requires "a short and plain statement of the claim . . . to give the defendant fair
    notice of what the claim is and the grounds upon which it rests."); *Starr v. Baca*, 652 F.3d 1202,
28  1216 (9th Cir. 2011) ("[C]omplaint . . . must contain sufficient allegations of underlying facts to
    give fair notice and to enable the opposing party to defend itself effectively").

indictment). Under the common law, where a plaintiff challenges both his prosecution *and* his detention pursuant to process, "any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007) (citations omitted). Any separate claim for unlawful detention must be dismissed. *See Braunstein v. USPS*, No. 05-16390, 2007 U.S. App. LEXIS 8831, *3 (9th Cir. Apr. 12, 2007) ("[Plaintiff] was arrested only after indictment and was never detained without process. Therefore, he has no false arrest claim under either the FTCA or *Bivens*."). That same analysis also applies to Predicate No. 5 (causing the revocation of Plaintiff's visa). The revocation of Plaintiff's visa, just like his detention, appears to have been a natural consequence of his prosecution and thus, if actionable at all, is recoverable as part of the damages for malicious prosecution. The upshot is that the IIED, NIED, and negligence claims, to the extent they rely on Predicate Nos. 4 (causing a detention) and 5 (causing the revocation of Plaintiff's visa) as separate bases for recovery should also be dismissed as wholly duplicative of Predicate No. 1 (causing a malicious prosecution).

In addition, Predicate Nos. 1 (causing a malicious prosecution) and 2 (causing an invasion of privacy) should be dismissed as duplicative of other pleaded torts: Count Five (malicious prosecution) and Count Nine (invasion of privacy). To be sure, the Ninth Circuit has interpreted the Second Restatement on Torts as allowing a plaintiff to plead emotional distress claims that overlap with a separately pleaded intentional tort so long as the plaintiff alleges that the officers intended to cause emotional distress, *see Gasho*, 39 F.3d a 1434; but Nevada law controls here. *See Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001) (state law governs FTCA tort claim). Under Nevada law, a party cannot assert emotional distress claims predicated solely on the commission of a separately pleaded intentional tort. For example, in *Olivero v. Lowe*, 995 P.2d 1023 (Nev. 2000), the plaintiff alleged an assault and battery claim *and* a separate IIED claim predicated entirely on the commission of that same assault and battery. The Nevada Supreme Court held "that the separate claim for intentional infliction of emotional distress was rendered moot, given that the emotional damages were subsumed within the damages awarded in connection with the claims of assault and battery." *Id.* at 1027 n.2; *see*

*also Falline v. GNLV Corp.*, 823 P.2d 888, 894 (Nev. 1991) (declining to recognize separate NIED claim where same conduct gave rise to a standalone negligence claim: "because the key element for liability in such an action is negligence . . . emotional distress is more appropriately treated as an element of damage in such causes of action rather than a cause of action itself"). To hold otherwise would mean that every alleged malicious prosecution and every alleged invasion of privacy also gives rise to claims for IIED, NIED, and negligence. That is not the law.[3]

Allowing these duplicative claims to proceed would also run afoul of Nevada's prohibition on double recovery. *See Elyousef v. O'Reilly & Ferrario, LLC*, 245 P.3d 547, 549 (Nev. 2010) ("[W]hen a plaintiff asserts claims under different legal theories, he or she is not entitled to a separate compensatory damage award under each legal theory. Rather, the plaintiff is entitled to only one compensatory damage award on one or both theories of liability."). If Plaintiff is ultimately successful on his underlying theories of malicious prosecution and invasion of privacy, then he can recover directly under those torts as both allow for emotional damages. *Miller v. Schnitzer*, 371 P.2d 824, 828 (Nev. 1962) (malicious prosecution allows for "mental suffering" damages); *Hetter v. Dist. Court*, 874 P.2d 762, 764-65 (Nev. 1994) (invasion of privacy allows for "mental anguish" damages). What he cannot do is allege a malicious prosecution claim, allege separate tort for "causing a malicious prosecution," and then proceed under duplicative theories. For these reasons, the IIED, NIED, and negligence claims, to the extent they rely on Predicate Nos. 1 (causing a malicious prosecution) and 2 (causing an invasion of privacy) as separate bases for recovery should be dismissed as duplicative of Count Five (malicious prosecution) and Count Nine (invasion of privacy).

In sum, Predicate Nos. 4 (causing a detention) and 5 (causing the revocation of Plaintiff's visa) are wholly duplicative of Predicate No. 1 (causing a malicious prosecution); and Predicate Nos. 1 (causing a malicious prosecution) and 2 (causing an invasion of privacy) are wholly duplicative of Count Five (malicious prosecution) and Count Nine (invasion of privacy). The

---

[3] It is particularly inappropriate to suggest that malicious prosecution can sound in negligence or NIED as Nevada does not recognize *negligent* prosecution claims. *See Decanio v. Cannon*, No. 59744, 2014 Nev. Unpub. LEXIS 442, *3 n.1 (Nev. Mar. 13, 2014) (allegations that defendant negligently allowed plaintiff to be prosecuted "are not proper claims for a civil complaint").

IIED, NIED, and negligence claims, to the extent they rely on any of these predicate acts as separate bases for recovery, should be dismissed as duplicative. That just leaves Predicate No. 3 (targeting Plaintiff for his race and ethnicity). But as discussed in the next section, any tort claim that relies on that so-called predicate act simply fails to state a claim.

### 2. Predicate No. 3 fails to state a claim.

Predicate No. 3 challenges the targeting of Plaintiff for his race and ethnicity. Compl. ¶¶ 81, 84; *see also id.* ¶ 87 (challenging the "actions as described above"). Any tort claim based on this predicate act fails on the merits. Assuming Nevada even recognizes a tort premised on the targeting of one's race or ethnicity, it is unclear how one *negligently* targets one at all and thus, at best, this claim likely sounds only in IIED. And in all events, Plaintiff has failed to plausibly allege that he was targeted based on his race and ethnicity. As explained in the motion to dismiss filed by the individual defendants this same date, several individuals were investigated as part of this money-laundering scheme and three others were ultimately indicted – facts that conclusively refute Plaintiff's bare allegation of racial and ethnic animus. *See* Individual Defendants' Motion to Dismiss (ECF 13), at 20-21. The United States incorporates those arguments herein. Further, as also explained in the motion to dismiss filed by the individual defendants, to support his claim of animus, Plaintiff relies on a single statement by a confidential human source to "kick his ass back to where he came from." *Id.*; *see also* Compl. ¶ 56. That statement does not reference Plaintiff's race or ethnicity at all. And even if it did, one alleged comment by an informant is insufficient to plausibly allege that a multi-year, multi-defendant federal investigation and prosecution was initiated solely because of Plaintiff's race and ethnicity. Thus, the IIED, NIED, and negligence claims, to the extent they rely on Predicate No. 3 as a separate basis for recovery should be dismissed for failing to state a claim.

### 3. The emotional distress claims (Counts Six and Seven) should be dismissed because Plaintiff fails to sufficiently allege emotional distress damages.

The two emotional distress claims, IIED (Count Six) and NIED (Count Seven), are independently subject to dismissal for failing to sufficiently allege damages. To state an IIED claim under Nevada law, a plaintiff must plead "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing

emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998); *see also Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized society." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation omitted). To state an NIED claim, a plaintiff must plead that (1) the defendant acted negligently, (2) either a physical impact or, in the absence of a physical impact, proof of serious emotional distress causing a physical injury or illness, and (3) actual or proximate causation. *Barmettler*, 956 P.2d at 1387. In Nevada, a plaintiff must set forth "objectively verifiable indicia" to establish that he "actually suffered extreme or severe emotional distress." *Miller*, 970 P.2d at 577. Normally, that means there must be some medical evidence to support the claim, but Nevada also uses a "sliding-scale approach," at least for IIED claims. *Franchise Tax Bd. v. Hyatt*, 407 P.3d 717, 742 (Nev. 2017), *rev'd on other grounds by* 139 S. Ct. 1485 (2019); *Nelson v. Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983) ("The less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress."). Under that approach, where the conduct is more extreme and outrageous, "other objectively verifiable evidence" may suffice. *Hyatt*, 407 P.3d at 742. For example, in *Hyatt*, where the conduct was particularly extreme and outrageous, the court allowed the plaintiff to rely on third-party testimonial evidence, as opposed to medical records, to support the IIED claim. *Id.*

For both torts, the plaintiff must also allege a "physical impact" or "serious emotional distress causing physical injury or illness." *Barmettler*, 956 P.2d at 1387 ("[I]n cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented."); *see also Alexander v. Falk*, No. 16-2268, 2019 U.S. Dist. LEXIS 132201, *26-29 (D. Nev. Aug. 2019); *Friedman v. United States*, No. 18-857, 2019 U.S. Dist. LEXIS 2476, *13-15 (D. Nev. Jan. 7, 2019) (Mahan, J.) (holding that plaintiff must show some physical manifestation of the emotional distress) (citing *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010)).

"Insomnia and general physical or emotional discomfort are insufficient to satisfy the physical impact requirement." *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993). The need for "additional minimal therapy," *Barmettler*, 956 P.2d at 1387; stress, sleeplessness, and appetite loss, *Ainsworth v. Newmont Mining Corp.*, No. 56250, 2012 Nev. Unpub. LEXIS 435, *10 (Nev. Mar. 20, 2012); *Churchill v. Barach*, 863 F. Supp. 1266, 1275 (D. Nev. 1994); periods of depression where the plaintiff did not seek medical or psychiatric assistance, *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998); feelings of inferiority, headaches, irritability, and weight loss, *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993); and heartburn, stomachaches, difficulty sleeping, depression, and lack of concentration, *Klementi v. Spencer*, No. 14-260, 2018 Nev. Dist. LEXIS 935, *22 (Nev. 9th Jud. Dist. Aug. 21, 2018); are all insufficient.

Here, Plaintiff does not allege any objectively verifiable indicia to show that he actually suffered extreme or severe emotional distress. He also does not allege a physical impact. Instead, he alleges that he suffered "severe emotional distress that manifested in physical symptoms." *See* Compl. ¶¶ 81, 84. That allegation is too conclusory to support an emotional distress claim. *See Friedman*, 2019 U.S. Dist. LEXIS 2476, at *13-15 (finding allegation of "[p]hysical pain and suffering and extreme emotional trauma, suffering, and distress requiring the expenditure of money for treatment of the emotional distress" too conclusory). Beyond that, the complaint does allege that Plaintiff suffered appetite loss, difficulty sleeping and nightmares, exhaustion, lack of concentration and patience, shortness of temper, and change in work behavior. Compl. ¶¶ 61, 69. These are exactly the kinds of symptoms courts have held are insufficient to support an emotional distress claim under Nevada law.[4]

For this additional reason, this Court should dismiss Counts Six and Seven.

---

[4] Even in the absence of a "physical impact" requirement, Nevada law still requires sufficient allegations of "extreme or severe" emotional distress. *See Miller*, 970 P.2d at 577. "To establish severe emotional distress, the plaintiff must demonstrate that the stress [is] so severe and of such intensity that no reasonable person could be expected to endure it." *Alam*, 819 F. Supp. at 911 (internal quotations and citation omitted). The complaint's bare allegations of minor discomfort do not come close to satisfying this stringent standard.

**4.    The malicious prosecution claim (Count Five) and the IIED, NIED, and negligence claims (Counts Six, Seven, and Eight), to the extent they rely on malicious prosecution as a predicate act, should all be dismissed because probable cause existed to charge Plaintiff.**

Under Nevada law, the elements for malicious prosecution are (1) want of probable cause to initiate criminal proceedings; (2) malice; (3) favorable termination; and (4) damages. *Jordan v. Bailey*, 944 P.2d 828, 834 (Nev. 1997) (citation omitted); *see also Jordan v. State ex rel. DMB & Publ Safety*, 110 P.3d 30, 48 (Nev. 2005), *overruled on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (2008) (citation omitted). Probable cause is judged by an objective test, asking whether "a reasonable attorney would have found legally tenable grounds to charge" the suspect with a crime. *Id.* "It is firmly established . . . that the finding of probable cause may be based on slight, even marginal, evidence." *Nevada v. Boueri*, 672 P.2d 33, 36 (Nev. 1983) (citation omitted). "The state need only present enough evidence to create a reasonable inference that the accused committed the offense with which he or she is charged." *Id.* (citation omitted). But here, a grand jury found probable cause to indict. Compl. ¶ 23. Under Nevada law, that finding creates a presumption of probable cause that can be overcome only by allegations that it was procured by false or fabricated evidence. *Jordan*, 110 P.3d at 48-49 & n.65. Plaintiff cannot do that here because, as explained in further detail below, he acknowledge the existence of key facts in the criminal case that indisputably gave rise to probable cause.[5]

The indictment charged Plaintiff with one count of money laundering and aiding and abetting on August 20, 2016, and one count of conspiracy to commit money laundering. Compl. ¶ 15. Although he was only charged with participating in the scheme on this one particular day, so long as there was probable cause to believe that he did, there would be sufficient evidence to support both criminal counts in the indictment. *See Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016) ("[A] conspirator [need] not agree to commit or facilitate each and every part of the

---

[5] The alleged failure to turn over exculpatory evidence cannot overcome the presumption of probable cause because there is no duty to present such evidence to the grand jury. *United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Bingham*, 653 F.3d 983, 999 (9th Cir. 2011); *Friedman*, 2019 U.S. Dist. LEXIS 2476, at *11 (dismissing Nevada malicious prosecution claim premised on suppression of exculpatory evidence because no duty to present such evidence to grand jury).

1  substantive offense.") (citation omitted); *Esco Corp. v. United States*, 340 F.2d 1000, 1006 (9th

2  Cir. 1965) (defendant need not have participated in each and every transaction in order to be

3  liable for entire conspiracy). Further, in light of the conspiracy and aiding and abetting charges,

4  Plaintiff need not have committed the substantive offense himself for criminal liability to attach.

5  *See Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946) (explaining elements of a criminal

6  conspiracy); *United States v. Gaskins*, 849 F.2d 454, 459 (9th Cir. 1988) (explaining elements of

7  aiding and abetting). Instead, so long as an objectively reasonable officer could have believed

8  that a money-laundering scheme existed, that Plaintiff intended to facilitate the scheme, and that

9  Plaintiff provided *any assistance*, then probable cause existed to initiate proceedings – even if his

10  role was minor. *See United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) ("Once

11  evidence of a conspiracy is established, only a slight connection between the defendant and the

12  conspiracy is necessary to convict the defendant of knowing participation in the conspiracy.")

13  (citation omitted); *United States v. Vaccaro*, 816 F.2d 443, 455 (9th Cir. 1987) ("[I]n order to

14  prove that a defendant aided and abetted a crime, the Government need only show that the

15  defendant intentionally associated himself with criminal activity and by his active participation

16  sought to make it succeed."). Moreover, intent to conspire and to aid and abed can be inferred by

17  circumstantial evidence. *See United States v. Batimana*, 623 F.2d 1366, 1368 (9th Cir. 1980); *see*

18  *also Vaccaro*, 816 F.2d at 455. "Acts which seem otherwise innocent, when viewed in the

19  context of the surrounding circumstances, may justify an inference of complicity." *Id.* (citation

20  omitted).

21          Plaintiff is well aware (because he acknowledged it in the criminal case) that his brother,

22  Emile Bouari, was recorded as telling undercover officers that he and Plaintiff worked out a deal

23  so that "we use [Plaintiff's] bank accounts and [Plaintiff's] company" for the money-laundering

24  scheme and that he also told Plaintiff "if you f*ck around with these guys they're going to kill

25  you." Government Response to Motion to Dismiss, *Bouari*, No. 16-cr-32 (D. Nev.) (ECF 96, at

26  5); Reply in Support of Motion to Dismiss, *Bouari*, No. 16-cr-32 (D. Nev.) (ECF 106, at 2-3).

27  Based on those statements, a law enforcement officer could reasonably believe that Plaintiff was

28  not only aware of the money-laundering scheme but also a willing participant. Indeed, statements

by an accomplice to an undercover officer are presumed reliable. *See United States v. Castillo*, 866 F.2d 1071, 1077 (9th Cir. 1988). Moreover, because these statements demonstrated the brother's own willingness to participate in an ongoing criminal enterprise and thus, was a statement against his own penal interest, it carried its own indicia of reliability. *See United States v. Harris*, 403 U.S. 573, 583-84 (1971). While Plaintiff is well aware that his brother made these inculpatory recorded statements, he nonetheless argued in the criminal case that his brother lacked credibility because certain other leads the brother provided to undercover officers did not pan out. Reply in Support of Motion to Dismiss, *Bouari*, No. 16-cr-32 (D. Nev.) (ECF 106, at 2-3). But Plaintiff conceded that at this point in the conspiracy, the brother had already laundered over a half million dollars and successfully recruited two individuals into the scheme. Motion to Dismiss the Indictment, *Bouari*, No. 16-32 (D. Nev.) (ECF 89, at 2, 4); Reply in Support of Motion to Dismiss, *Bouari*, No. 16-cr-32 (D. Nev.) (ECF 106, at 5). Thus, there was sufficient reason for law enforcement to find the brother credible, even if several of his other leads did not pan out. That does not mean that the officers were *required* to credit the brother or could rely *solely* on his statements, but it is certainly evidence they could reasonably consider in the overall probable-cause analysis. Moreover, credibility challenges do not overcome the presumption of probable cause created by the grand jury indictment. Plaintiff must instead show false or fabricated evidence. He cannot do so here because his brother's statements are recorded.

Plaintiff is also well aware (because he again acknowledged it in the criminal case) that on August 20, 2016, he brought a money counter to a hotel room and watched his brother and the undercover co-conspirators his brother warned him about count $60,000 in cash. That large sum of money alone is strong evidence that criminal activity was likely afoot, or at the very least evidence a reasonable officer could consider in determining that Plaintiff likely knew criminal activity was afoot. *United States v. Padilla*, 888 F.2d 642, 644 (9th Cir. 1989) (characterizing $40,000 as an "extremely large amount" of money that most "law-abiding wage earners" do not keep lying around) (citation omitted); *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir. 1984) (extremely large amount of money itself is strong evidence of criminal activity). And in light of the brother's prior statements, a reasonable officer could believe that in

bringing the money counter to a hotel room to count an extremely large sum of money that (1) Plaintiff (1) was well aware the money was being laundered; and (2) intended to and did in fact aid and abed this one act of money laundering. Apparently, that is precisely what the grand jury found when it issued its indictment, creating a presumption that probable cause exists. Plaintiff cannot overcome that presumption because the officers did not fabricate the fact that he brought the money counter to the hotel room, an interaction that was also recorded. Plaintiff may not like the grand jury's conclusion, but that does not overcome the presumption of probable cause. And that grand jury finding forecloses the malicious prosecution claim against the United States here, as well as any other tort claims that rely on malicious prosecution as their predicate acts.

Apart from the grand jury's finding, this evidence is also sufficient to establish probable cause in its own right. To be sure, the United States admits the evidence against Plaintiff for aiding and abetting this one act of money laundering and for conspiracy was marginal, but "marginal," even "slight" evidence is enough for probable cause under Nevada law. *Boueri*, 672 P.2d at 36. Thus, even without the presumption, probable cause existed and that is a complete defense to a malicious prosecution claim under Nevada law. *See Jordan*, 944 P.2d at 834.

**D.     This Court should strike the claims for declaratory and injunctive relief.**

It is unclear whether the complaint seeks declaratory and injunctive relief against the United States. It seeks such relief only on the constitutional claims against the individual defendants. Compl. ¶¶ 21, 92C. But the individual defendants are sued in their individual *and* official capacities, the latter of which are really claims against the United States. *Balser v. DOJ*, 327 F.3d 903, 907 (9th Cir. 2003). The only asserted bases for jurisdiction against the United States are the FTCA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. Compl. ¶¶ 2, 22. "[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). And the FTCA only permits a suit for money damages, it does not provide for declaratory or injunctive relief. *See Westbay Steel, Inc. v. United States*, 970 F.2d 648, 651 (1992). The Declaratory Judgment Act also does not provide an independent basis for jurisdiction. *Gritchen v. Collier*, 254 F.3d 807, 811 (9th Cir. 2001); *see also Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). Thus, the request

for declaratory and injunctive relief against the United States should be stricken.

## V.   CONCLUSION

Based on the foregoing, this Court should grant the motion to dismiss and dismiss the complaint in its entirety against the United States.

Respectfully submitted this 2nd day of October 2020.

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

ANDREA W. MCCARTHY
Senior Trial Counsel
Torts Branch, Civil Division

*s/ Siegmund F. Fuchs*
SIEGMUND F. FUCHS
Senior Trial Attorney
Torts Branch, Civil Division

Attorneys for Defendants

## <u>PROOF OF SERVICE</u>

I, Siegmund F. Fuchs, certify that the following individual was served with a copy of the

**MOTION TO DISMISS** on the date and by the identified method of service below:

**<u>ELECTRONIC CASE FILING:</u>**

Benjamin C. Durham, Esq.
601 South 10th Street, Suite 101
Las Vegas, Nevada  89101
702-631-6111
bdurham@vegasdefense.com


Dated this 2nd day of October 2020.


                                        */s/ Siegmund F. Fuchs*
                                        SIEGMUND F. FUCHS
                                        Senior Trial Attorney