SIEGMUND F. FUCHS
Senior Trial Attorney, Torts Branch
D.C. Bar No. 986828
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044-7146
Telephone: (202) 616-4322
Email: siegmund.f.fuchs@usdoj.gov

*Attorney for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GHASSAN HOUBOUS BOUARI,    ) | Case No: 2:18-cv-00219-JCM-BNW |
|       Plaintiff,    ) | |
|    v.         ) | |
|        ) | |
| UNITED STATES OF AMERICA, FBI SA  ) | **MOTION TO DISMISS** |
| CHARLES RO; FBI SA DENNIS LAO; FBI  ) | |
| SA ELENA IATAROLA,     ) | |
|        ) | |
|       Defendants.    ) | |

Defendants Charles Ro, Dennis Lao, and Elena Iatarola, move to dismiss this action brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. §§ 1983 and 1988, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is based on the following Memorandum of Points and Authorities.

Respectfully submitted this 2nd day of October 2020.

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

ANDREA W. MCCARTHY
Senior Trial Counsel
Torts Branch, Civil Division

*/s/ Siegmund F. Fuchs*
SIEGMUND F. FUCHS
Senior Trial Attorney
Torts Branch, Civil Division

## MEMORANDUM OF POINTS OF AUTHORITIES

### I.   INTRODUCTION

This suit arises out of a two-year money laundering investigation, culminating with a grand jury finding probable cause to indict Plaintiff on (1) one count of money laundering and aiding and abetting; and (2) one count of conspiracy to commit money laundering. Early in the criminal case, the United States dismissed Plaintiff, and he subsequently filed this lawsuit. As relevant here, he pleads four constitutional claims (Counts One, Two, Three, and Four) against the two federal agents who investigated him, Charles Ro and Dennis Lao, and their alleged supervisor, Elena Iatarola. This Court should dismiss all claims against them. *First*, all four constitutional claims should be construed as claims brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and limited to claims for damages against the individual defendants in their individual capacities. *Second*, special factors counsel hesitation against creating a new constitutional damages action for wrongful prosecution-based claims, as this Court has already held. *See Friedman v. United States*, No. 18-857, 2019 U.S. Dist. LEXIS 2476, *17-20 (D. Nev. Jan. 7, 2019) (Mahan, J.). *Third*, the individual defendants are entitled to qualified immunity because Plaintiff fails to sufficiently plead their personal participation in a clearly established constitutional violation.

### II.   BACKGROUND

Plaintiff Ghassan Houbous Bouari brings this suit arising out of his arrest and prosecution for his alleged participation in a money-laundering scheme. Complaint ("Compl.") ¶ 15. He filed suit against the United States of America; two Special Agents for the Federal Bureau of Investigation (FBI): Charles Ro and Dennis Lao; and FBI Supervisory Special Agent Elena Iatarola. *Id.* ¶¶ 5-8. The individual defendants are sued in their individual and official capacities. *Id.* ¶¶ 5-7. This motion deals only with the claims against the individual defendants.

According to the complaint, the FBI undertook a reverse sting operation first targeting Plaintiff's brother, Emile Bouari, for money laundering. *Id.* ¶ 15. As Plaintiff acknowledged in the criminal case, the investigation eventually targeted over twenty individuals, with four ultimately indicted. *See* Reply to Government's Response to Motion to Dismiss, *United States v.*

*Bouari*, No. 16-cr-32 (D. Nev.) (ECF 106, at 9:18-19). Plaintiff himself was a temporary resident alien, but as he also acknowledged in the criminal case, the investigation targeted U.S. citizens as well. *Id.* at 5:21-23. On February 3, 2016, Plaintiff was indicted for his alleged participation, along with his brother, his brother's girlfriend (Kimberly Ann Milko), and his brother's assistant (Mary Diane Green). Compl. ¶¶ 15, 23. Specifically, he was indicted on (1) one count for money laundering $60,000 on August 20, 2015, in Miami, Florida, and aiding and abetting (Count Twelve of the indictment); and (2) one count for conspiracy to commit money laundering, in the amount of $590,000, beginning in March 2014 and continuing to the date of the indictment (Count Thirteen of the indictment). *Id.* ¶ 15; *see also* Indictment, *Bouari*, No. 16-cr-32 (D. Nev.) (ECF 1).

A warrant for his arrest issued on February 3, 3016, and he was arrested three days later. *Id.* ¶¶ 28-29. He initially appeared on February 8, 2016, and this Court ordered him detained. *Id.* ¶¶ 31-32. On August 9, 2017, based on the government's own motion, this Court dismissed Plaintiff from the criminal case, and he was released on August 18, 2017. *Id.* ¶ 41. On November 27, 2017, Plaintiff filed a motion for a certificate of innocence, which this Court denied, stating that "[t]he government's dismissal of an indictment is not tantamount to a finding of innocence regarding the underlying charges." Order, *Bouari*, No. 16-cr-32 (D. Nev.) (ECF 123).[1]

Based on his allegation that the charges against him "were false, malicious, and entirely fabricated," Compl. ¶ 16, Plaintiff alleges four constitutional claims against the individual defendants: (1) Fourth Amendment malicious prosecution and Fifth Amendment fabrication of evidence (Count One); (2) Fifth Amendment selective prosecution and due process (Count Two); (3) Fourth Amendment unlawful search and seizure of property (Count Three); and (4) Fourth Amendment unlawful seizure of person (Count Four). All four claims should be dismissed.

---

[1] Not all of these facts appear in the complaint, but it is well settled that Rule 201 of the Federal Rules of Evidence permits a court to take judicial notice of undisputed matters of public record, including documents and records on file in federal court. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see also* Fed. R. Evid. 201.

III.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Graham-Sult v. Clainos*, 756 F.3d 724, 748 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When ruling on a motion to dismiss, courts "take all of the factual allegations in the complaint as true, [they] are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted). "Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). Finally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

IV.    ARGUMENT

A. **All constitutional claims should be construed as *Bivens* claims for damages against the individual defendants in their individual capacities only.**

Plaintiff brings his constitutional claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. §§ 1983 and 1988 against the individual defendants in their individual and official capacities and seeks money damages and declaratory and unspecified injunctive relief. Compl. ¶¶ 5-7, 21, 92. Section 1983 provides a remedy against 'any person' who, under color of *state* law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (emphasis added); *see also* 42 U.S.C. § 1983. Based on that statute's plain language, the Ninth Circuit has stated in no uncertain terms: "Lest there be any continuing confusion, we take this opportunity to remind the Bar that by its very terms, § 1983 precludes liability in federal government actors." *Morse v. N. Coast Opportunities., Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997). The individual defendants here are alleged to have been at all times federal government actors acting under color of federal law. Compl. ¶¶ 5-7, 13. Section 1983 simply does not apply to them. And Section 1988 does not provide for a cause of action at all. *See Moor v. Cty. of Alameda*, 411 U.S. 693, 704 n.17 (1973). Thus, Counts One, Two, Three, and Four, to the extent

they are brought under Sections 1983 and 1988, should be dismissed, and those claims should be

construed as *Bivens* claims only.

The Ninth Circuit has also clarified that a *Bivens* suit does not allow for declaratory and

injunctive relief; nor does *Bivens* apply to federal actors in their official capacities. *Ministerio*

*Roca Solida v. McKelvey*, 820 F.3d 1090, 1093-94 (9th Cir. 2016) ("The only remedy available

in a *Bivens* action is an award for monetary damages from defendants in their individual

capacities.") (quoting and joining *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007)); *see*

*also Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173

(9th Cir. 2007) ("[A] *Bivens* action can be maintained against a defendant in his or her individual

capacity only, and not in his or her official capacity.") (citation omitted). Thus, Counts One,

Two, Three, and Four against the individual defendants in their official capacities should be

dismissed, and the claims for declaratory and unspecified injunctive relief should be stricken.[2]

In sum, all constitutional claims should be (1) construed as *Bivens* claims; (2) limited to

claims for *damages*; (3) against the individual defendants in their *individual* capacities only.

**B.   Special factors counsel hesitation against recognizing an implied cause of action for any claims arising out of Plaintiff's detention pursuant to criminal process.**

Counts One, Two, Three, and Four all challenge alleged injuries arising out of Plaintiff's

detention pursuant to criminal process. That much is clear with the malicious and selective

prosecution claims (Counts One and Two), which directly challenge the prosecution itself. The

same can be said for the unlawful search and seizure claims (Counts Three and Four). Indeed,

Plaintiff was at all times detained pursuant to process, not before. Compl. ¶¶ 23, 28 (alleging that

Plaintiff was arrested pursuant to warrant following indictment). Thus, the malicious prosecution

and unlawful seizure of *person* claims (Counts One and Four) collapse into a single tort for

malicious prosecution. *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007) (once there is detention

---

[2] It is unclear whether the complaint also seeks declaratory and injunctive relief against the United States. It seeks such relief only on the constitutional claims against the individual defendants. Compl. ¶¶ 21, 92C. But the individual defendants are sued in their individual *and* official capacities, the latter of which are really claims against the United States. *Balser v. DOJ*, 327 F.3d 903, 907 (9th Cir. 2003). To the extent the complaint does seek such relief against the United States, Plaintiff does not assert a jurisdictional basis for doing so, as the United States argues in its motion to dismiss filed this same date. *See* U.S. Motion to Dismiss, at 19 (ECF 12).

1   pursuant to process "any damages recoverable must be based on a malicious prosecution claim

2   and on the wrongful use of judicial process rather than detention itself") (citations omitted). As

3   to the unlawful search and seizure of *property* claim (Count Three), as far as Defendants can tell,

4   that alleged search and seizure also occurred incident to Plaintiff's arrest following indictment.

5   In sum, all four constitutional claims rise and fall on whether Plaintiff's initial detention pursuant

6   to criminal process was lawful. But that presents a new context for purposes of *Bivens* liability,

7   and special factors counsel hesitation against implying a new damages remedy for such claims.

8   In fact, this Court has already declined to extend *Bivens* to wrongful prosecution-based claims.

9   *See Friedman v. United States*, No. 18-857, 2019 U.S. Dist. LEXIS 2476, *17-20 (D. Nev. Jan.

10  7, 2019) (Mahan, J.); *see also Cantu v. Moody*, 933 F.3d 414, 421-24 (5th Cir. 2019); *Farah v.

11  Weyker*, 926 F.3d 492, 497-503 (8th Cir. 2019); *Karkalas v. Marks*, No. 19-948, 2019 U.S. Dist.

12  LEXIS 127441, *15-37 (E.D. Pa. July 31, 2019); *Lane v. Schade*, No. 15-1568, 2018 U.S. Dist.

13  LEXIS 162855, *18-23 (D.N.J. Sept. 24, 2018) (all declining to extend *Bivens* to wrongful

14  prosecution-based claims). That same analysis warrants dismissal here.

15          In *Bivens*, the Court first recognized an implied cause of action for damages under the

16  Fourth Amendment against federal officials "who violated the prohibition against unreasonable

17  search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). It did so only after finding

18  no "special factors counselling hesitation." *Bivens*, 403 U.S. at 396. Despite multiple invitations

19  over the years, the Court has extended *Bivens* only twice, the most recent time more than three

20  decades ago. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980).

21  "These three cases – *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the

22  Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S.

23  Ct. at 1855. The Court indicated "it is possible that the analysis in the Court's three *Bivens* cases

24  might have been different if they were decided today." *Id.* at 1856. That is because "expanding

25  the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (citation omitted). Indeed,

26  in the last 38 years, the Court has "consistently refused to extend *Bivens* liability to any new

27  context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

28          In every *Bivens* case, "[t]he question is who should decide whether to provide for a

6

damages remedy, Congress or the courts?" *Abbasi*, 137 S. Ct. at 1857. (internal quotations and citation omitted). "The answer most often will be Congress." *Id.* That is because "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Id.* at 1858. "In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* at 1857 (internal quotations and citation omitted). "As a result, the Court has urged caution before extending *Bivens* remedies into any new context." *Id.* (internal quotations and citation omitted). Whenever special factors counsel *any hesitation*, "a *Bivens* remedy will not be available." *Id.*

The Court has refined its special factors analysis into a three-part inquiry. Courts must first determine whether the alleged *Bivens* claim presents a new context. "If the case is different in a meaningful way from previous *Bivens* cases decided by *this Court*, then the context is new." *Id.* at 1859 (emphasis added). If the context is new, then "there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *see also Abbasi*, 137 S. Ct. at 1858 (an alternative process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action"). Finally, in the absence of an alternative process, "a *Bivens* remedy is a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). In the end, "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy . . . the courts *must* refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Abbasi*, 137 S. Ct. at 1858 (emphasis added).

### 1.     Counts One, Two, Three, and Four raise a new *Bivens* context.

In determining whether a case presents a new context for *Bivens* purposes, the Supreme Court emphasized in *Abbasi* that "a modest extension is still an extension," even where the case

has "significant parallels to one of the Court's previous *Bivens* cases" and the differences are "perhaps small." 137 S. Ct. at 1861, 1864, 1865. Defendants are unaware of any court extending *Bivens* to selective prosecution claims under the equal protection component of the due process clause. Thus, there is no question that Count Two raises a new *Bivens* context. Counts One, Three, and Four, which allege injuries arising out of Plaintiff's detention pursuant to process, also raise a new context. Indeed, this Court already held in *Friedman* that similar claims for malicious prosecution and false imprisonment "do not fall within the three types of cases for which the Supreme Court has recognized a *Bivens* claim, [and thus,] the court must determine whether it should extend *Bivens*." 2019 U.S. Dist. LEXIS 2476, at *19.

The Fifth and Eighth Circuits similarly held that claims alleging that an officer duped a prosecutor and grand jury into believing that a plaintiff committed a crime – the same allegations Plaintiff makes here – present a new *Bivens* context. *Cantu*, 933 F.3d at 423; *Farah*, 926 F.3d at 498-500. The Fifth Circuit reasoned that such claims "involve[] intellectual leaps that a textbook forcible seizure never does," and thus, are meaningfully different from *Bivens*. *Cantu*, 933 F.3d at 423. The Eighth Circuit reached the same conclusion, finding that with wrongful prosecution-based claims (1) the alleged misdeeds are different from *Bivens*; (2) the mechanism of injury "bears little resemblance to the straightforward claims from *Bivens*;" and (3) extending *Bivens* would pose a greater risk of interference with the other branches, including inquiry into decisions made by federal investigators, prosecutors, and the grand jury. *Farah*, 926 F.3d at 498-99. "Nothing so intrusive was required to prove the claims in *Bivens*." *Id.* at 499. Both courts conceded that some similarities with *Bivens* existed, "[b]ut treating all search-and-seizure cases the same would contradict the Supreme Court's direction that a context can be new even if it involves the same constitutional right as an existing case." *Id.*; *Cantu*, 933 F.3d at 423. Thus, despite the extension being "modest," this Court should find that wrongful prosecution-based claims present a new *Bivens* context and that a special-factors analysis is required – just like it did in *Friedman*. *See also Karkalas*, 2019 U.S. Dist. LEXIS 127441, at *25 ("[Plaintiff's] claim rests upon his belief someone gave false testimony in a sealed grand jury proceeding. He does not show us a case extending *Bivens* in this context."); *Lane*, 2018 U.S. Dist. LEXIS 162855, at

*18-23 (such claims "do not resemble the claims the Court has previously approved.").[3]

2.   **Special factors counsel hesitation against extending *Bivens* to claims challenging one's detention pursuant to criminal process.**

Counts One, Two, Three, and Four all challenge conduct by Defendants in detaining and searching Plaintiff pursuant to criminal process. But a number of safeguards already protect a criminal defendant's constitutional rights during the criminal process, including the grand-jury, probable-cause hearings, bond hearings, dismissal motions, motions to return seized property, jury trials, judgments of acquittal, direct appeals, habeas, and even compensatory schemes. These ample protections "amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Abbasi*, 137 S. Ct. at 1858.

The starting point is the grand jury. *See* U.S. Const. amend V, cl. 1. "[T]he whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 47 (1992) (citations omitted). It makes an independent finding of probable cause and protects "against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974) (citation omitted); *United States v. Mechanik*, 475 U.S. 66, 74 (1986); *United States v. Caruto*, 663 F.3d 394, 398 (9th Cir. 2011); Fed. R. Crim. P. 6, 7. Post-indictment, the accused can also raise legal challenges to the prosecution. For example, Rule 12 affords relief from "selective or vindictive prosecution," "an error in the grand-jury proceeding or preliminary hearing," and the

---

[3] In *Brunoehler v. Tarwater*, 743 F. App'x 740, 743-44 & n.4 (9th Cir. 2018), the panel majority found that a Fourth Amendment false arrest claim pursuant to a warrant did not present a new *Bivens* context. As an unpublished decision, *Brunoehler* does not bind this court. *See* Ninth Cir. R. 36-3(a). The majority decision is also incorrect. As Judge Bea stated in dissent:

> The Majority concludes that Brunoehler's arrest was not meaningfully different than Bivens's. The Majority is incorrect, because Bivens was subjected to a warrantless arrest, and Brunoehler was arrested pursuant to a warrant which followed a Grand Jury indictment. The difference is crucial: the officers whom Brunoehler now sues were operating under a different "legal mandate" than were the officers in *Bivens*, who executed a warrantless search without probable cause. As a result, per [*Abbasi*], the difference between our case and *Bivens* is "meaningful." *Id.*

*Id.* at 751 (internal citations omitted). Subsequent decisions from the Fifth and Eighth Circuits as well as from this Court demonstrate that the majority's scant analysis in *Brunoehler* is flawed and should not be followed.

use of evidence illegally obtained. Fed. R. Crim. P. 12; *see also Mechanik*, 475 U.S. at 75 ("courts have consistently employed the remedy of dismissal of the indictment for deviations" from these rules) (O'Connor, J., concurring) (citation omitted). And Rule 41(g) provides a remedy for the "unlawful search and seizure of property." Fed. R. Crim. P. 41(g).

The Rules also enshrine the constitutional right to trial by jury, another protection against wrongful prosecution. *See* Fed. R. Crim. P. 23-31; *United States v. Gaudin*, 515 U.S. 506, 510–11 (1995) (jury trials are a necessary protection "against a spirit of oppression" and "great bulwark of [a citizen's] civil and political liberties") (citations omitted). They allow for mistrial if the defendant was substantially prejudiced during trial, *see* Fed. R. Crim. P. 23, acquittal at the close of the government's case or notwithstanding a guilty verdict, *see* Fed. R. Crim. P. 26.3, additional post-verdict remedies, *see* Fed. R. Crim. P. 32-39, and even a new trial in the "interest of justice." *See* Fed. R. Crim. P. 33. Congress also provided appellate remedies to challenge an unlawful detention. *See* Fed. R. App. P. 4(b), 9. These rules and procedures were formulated "after prolonged, careful and scholarly research." *United States v. Virginia Erection Corp.*, 335 F.2d 868, 870 (4th Cir. 1964). Additionally, Congress created an alternative existing process for challenging one's detention through the Bail Reform Act. *See* 18 U.S.C. §§ 3141-51. That statute carries a presumption *against* confinement and imposes detention only after "a full-blown adversary hearing," during which the defendant has the right to testify and present and cross-examine witnesses. *United States v. Salerno*, 481 U.S. 739, 750 (1987); 18 U.S.C. § 3142(f). The Bail Reform Act, like the Criminal Rules, was the product of careful Congressional deliberation. The Supreme Court later upheld the Act as constitutional, noting its "extensive [procedural] safeguards," Congress's "careful delineation of the circumstances under which detention will be permitted," and the Government's many regulatory interests. *See Salerno*, 481 U.S. at 751-52.[4]

---

[4] Relatedly, the federal habeas statutes, 28 U.S.C. § 2241, *et seq.*, establish post-conviction procedures for challenging one's detention. *Abbasi* itself recognized habeas as a significant remedy, emphasizing that "when alternative methods of relief are available, a *Bivens* remedy usually is not." 137 S. Ct. at 1863 (citation omitted). Even before *Abbasi*, the Ninth Circuit deemed habeas a significant remedy in declining to extend *Bivens* to claims challenging one's removal in the immigration context notwithstanding allegations that the detention was the result of fabricated evidence. *See Mirmehdi v. United States*, 689 F.3d 975 (9th Cir. 2012).

The Criminal Rules and the Bail Reform Act provide many avenues to challenge one's detention pursuant to process. Congress also decided that *compensation* may be awarded under certain circumstances. First, the Hyde Amendment authorizes a court to award a defendant "a reasonable attorney's fee and other litigation expenses" if the defendant is the "prevailing party" and "the position of the United States was vexatious, frivolous, or in bad faith." Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A, historical and statutory notes). The bill was specifically designed to provide a remedy for prosecutorial misconduct:

> What if Uncle Sam sues you, charges you with a criminal violation, even gets an indictment and proceeds, but they are wrong. They are not just wrong, they are willfully wrong, they are frivolously wrong. They keep information from you that the law says they must disclose. They hide information. They do not disclose exculpatory information to which you are entitled. They suborn perjury.

143 Cong. Rec. H7786-04, H7791 (Sept. 24, 1997) (statement of Rep. Hyde). The bill sought to strike "the proper balance" between "deter[ing] unjustifiable governmental conduct" but not "inhibit[ing] the aggressive prosecution of justifiable cases." Statement of Honorable Henry J. Hyde before House Rules Committee on Amendment to H.R. 2267, 1997 WL 545756 (Sept. 5, 1997). As Chairman Hyde explained, the current law does *not* authorize personal liability and instead "ma[kes] federal prosecutors immune from the tort of malicious prosecution." *Id.* The Hyde Amendment sought to *preserve* that balance by offering a limited attorney fee remedy for wrongful prosecutions. Notably, it did not create personal liability on behalf of federal officers.

Second, Congress enacted the Unjust Conviction and Imprisonment statute to provide compensation for those wrongfully convicted. *See* 28 U.S.C. § 2513. To seek compensation under the Act, a party must present to the Court of Federal Claims a "certificate of innocence" issued by the court that heard the facts leading to the wrongful conviction, and the Court of Federal Claims may award up to $50,000 per year of incarceration or $100,000 per year in capital cases. 28 U.S.C. § 2513(b)&(e).

Third, Congress enacted the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and §§ 2671-2680, which permits a damages action against the United States for claims such as false imprisonment, false arrest, malicious prosecution, and abuse of process where the conduct arises out of  "acts or omissions of investigative or law enforcement officers of the United States

Government," 28 U.S.C. § 2680(h), so long as that conduct was not "based upon the exercise or performance or the failure to exercise or perform a discretionary function," 28 U.S.C. § 2680(a). This Court has recognized that "these torts fully encompass" activities that give rise to wrongful prosecution-based claims and thus, the FTCA is an additional remedial scheme counseling hesitation against implying a new, free-wielding constitutional damages action. *Friedman*, 2019 U.S. Dist. LEXIS 2476, at *20; *see also Cantu*, 933 F.3d at 423.[5]

In short, "[i]nherent in the judicial process are checks that serve to restrain prosecutorial abuse, and any abuse that does occur is subject to various self-remedying mechanisms of the adversarial process." *Gray v. Bell*, 712 F.2d 490, 498 (D.C. Cir. 1983). And where the government acts maliciously and the criminal defendant prevails or where the criminal defendant proves his innocence, Congress provided for compensation, as well as other potential remedial schemes. What Congress did not do is create a personal damages remedy against federal officers. That reflects Congress's careful balancing of the need for robust prosecutions against the harm of wrongful convictions. It is the kind of Congressional judgment that warrants judicial deference and forecloses creating an *additional* monetary remedy against individual federal officers through judicial implication, particularly given that "expanding *Bivens* is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (citation omitted).

Many of these safeguards came into play in Plaintiff's criminal case. A grand jury found probable cause, a hearing was held where he challenged his detention, he successfully sought dismissal of the indictment, and he sought a certificate of innocence. That he might not have received all the *relief* he wanted is of no moment. As the Supreme Court stated:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the

---

[5] While the FTCA *alone* might be insufficient to counsel hesitation against extending *Bivens*, *see, Carlson*, 446 U.S. at 19-23, it certainly is an alternative remedial scheme this Court may consider in conjunction with other alternative remedies available to Plaintiff. *See Hernandez v. Mesa*, 140 S. Ct. 735, 748 n.9 (2020) (rejecting the argument that through the FTCA Congress "intended for a robust enforcement of *Bivens* remedies").

plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy.

*Bush*, 462 U.S. at 388; *see also Liff v. OIG DOL*, 881 F.3d 912, 921 (D.C. Cir. 2018) ("The question is whether alternative remedies exist, not whether they cover the full breadth of harm that a would-be *Bivens* plaintiff alleges. Even if gaps remain . . . Congress's activity in this area counsels against a judicially created *Bivens* remedy."); *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009) (courts should defer to statutory scheme even where scheme fails to provide "significant relief," so long as Congress's decision was not inadvertent).

This is why the Eighth Circuit recently declined to extend *Bivens* to claims alleging that officers duped a prosecutor and grand jury into believing that the plaintiffs committed a crime. *Farah*, 926 F.3d at 498. There, the plaintiffs brought a *Bivens* suit alleging that officers violated their rights by lying, manipulating witnesses, and falsifying evidence, all to initiate a wrongful prosecution – the same allegations Plaintiff makes here. *Id.* at 496-97. The court identified two special factors counseling hesitation. First, implying a cause of action would risk "burdening and interfering with the executive branch's investigative and prosecutorial functions," as well as grand jury proceedings. *Id.* at 500; *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) ("[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.").[6] Second, Congress already addressed these sorts of injuries though the Hyde Amendment, the habeas statute, and the Unjust Conviction and Imprisonment statute. *Id.* at 501-02. The court recognized that costs and benefits exist to implying a right of action for claims challenging one's detention pursuant to process, but "it is not our place to weigh these competing policy concerns. Rather, having identified sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, we must refrain from creating one ourselves." *Id.* at 502 (quoting *Abbasi*, 137 S. Ct. at 1858) (internal quotations omitted).[7]

---

[6] Grand jury proceedings are so sacrosanct that witnesses, including law enforcement officers, are absolutely immune from civil liability for their grand jury testimony, even if they knowingly provide false testimony. *See Rehberg v. Paulk*, 566 U.S. 356, 367-70 (2012).

[7] *See also Cantu*, 933 F.3d at 423-24 (declining to extend *Bivens* to evidence fabrication claim, finding that plaintiff had other avenues of relief and Congressional inaction in this area counsels hesitation); *Vennes v. An Unknown Number of Unidentified Agents of U.S.*, 26 F.3d 1448, 1452-

This Court's *Friedman* decision and the growing trend not to extend *Bivens* to wrongful prosecution-based claims are all consistent with a long line of Supreme Court cases refusing to question the reasons for initiating a prosecution. For example, in *United States v. Armstrong*, 517 U.S. 456 (1996), the Court addressed the standard for discovery in selective-prosecution cases. In finding that criminal defendants are *not* entitled to selective-prosecution discovery as a matter of course, the Court emphasized that "[a] selective-prosecution claim asks a court to exercise judicial power over a 'special province' of the Executive." *Id.* at 464 (citation omitted). "The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *Id.* (citation omitted). Thus, a "presumption of regularity" applies to *all* prosecutorial decisions, and so long as probable cause exists, "what charge to file or bring before a grand jury, generally rests entirely in [that] discretion." *Id.* (citation omitted); *see also Hartman v. Moore*, 547 U.S. 250, 263 (2006) ("[T]his presumption . . . is one we do not lightly discard, given our position that judicial intrusion into executive discretion of such high order should be minimal."); *Wayte v. United States*, 470 U.S. 598, 607 (1985) ("[T]he decision to prosecute is particularly ill-suited to judicial review."). To hold otherwise "threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Id.* (citation omitted); *see also Vennes*, 26 F.3d at 1452 (stating that extending *Bivens* to wrongful prosecution-based claims "would have a chilling effect on law enforcement officers and would flood the federal courts with constitutional damage claims by the many criminal defendants who leave the criminal process convinced that they have been prosecuted and convicted unfairly").

As a final matter, extending *Bivens* to wrongful prosecution-based claims should be especially disfavored given how easy it is to allege such motive-based claims. The Supreme

---

53 (8th Cir. 1994) (declining to extend *Bivens* to police misconduct claim, finding that plaintiff should have litigated his claims "in the most timely and relevant proceeding, his criminal trial," which is the "process best suited to determining whether the agents in fact violated his due process rights"); *Karkalas*, 2019 U.S. Dist. LEXIS 127441, at *29 (noting that "Congress nevertheless created a remedial structure" through the Hyde Amendment and Unjust Conviction law to remedy against wrongful prosecutions and "we should not upset the structure by implying a *Bivens* action here").

Court has consistently resisted efforts to embroil the Judiciary in lawsuits over the subjective

motive of Executive officials in carrying out their official duties. *See Ashcroft v. al-Kidd*, 563

U.S. 731, 737 (2011) ("[W]e have almost uniformly rejected invitations to probe subjective

intent."); *Wood v. Moss*, 572 U.S. 744, 763-64 (2014) (declining to infer department-wide

subjective intent based on allegations of misconduct by a few). That is because "an official's

state of mind is easy to allege and hard to disprove." *Crawford-El v. Britton*, 523 U.S. 574, 584-

85 (1998) (internal quotations omitted); *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901

(9th Cir. 2008) ("There is almost always a weak inference of retaliation whenever a plaintiff and

a defendant have had previous negative interactions."). In *Wilkie*, the Court recognized as a

special factor the threat that expanding *Bivens* to a new context might "invite an onslaught of

*Bivens* actions." 551 U.S. at 562. That concern is apparent here, especially with respect to the

selective-prosecution claim, which rests on a single statement made during the course of a multi-

year investigation. Compl. ¶ 56. If one off-the-cuff statement (by an informant) is sufficient to

allege a selective prosecution claim as Plaintiff here seems to suggest, officers would find

themselves embroiled in civil litigation throughout the country. And when a new proposed

remedy runs the risk of opening the floodgates, the unusual risk of "burden and demand" on

federal officials is heightened and hesitation against extending *Bivens* is warranted. *Abbasi*, 137

S. Ct. at 1860.

  For all these reasons, this Court should decline the invitation to extend *Bivens* to claims

challenging injuries arising out of one's detention pursuant to criminal process – just like it did in

in *Friedman* – and dismiss Counts One, Two, Three, and Four, with prejudice.

**C.**  **Defendants Ro, Lao, and Iatarola are entitled to qualified immunity in their individual capacities because the complaint fails to sufficiently allege their personal participation in a clearly established constitutional violation.**

  Even if this Court decides to extend *Bivens*, Plaintiff's constitutional claims are subject to

dismissal based on qualified immunity. "[Q]ualified immunity protects government officials

from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (internal quotations and citation omitted). This protection is

"ample." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It shields "all but the plainly incompetent or those who knowingly violate the law," *id.*, and applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotations omitted). In addressing qualified immunity, courts answer two questions: first, whether the facts alleged show that the defendant violated a constitutional right, and second, whether that right was clearly established at the time. *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010). Courts can decide which question to answer first. *Pearson*, 555 U.S. at 236. If the facts alleged do not show conduct that violated a constitutional right or if that right was not clearly established at the time of the events alleged, the defendant is immune from suit. *Id.* at 243-45. This is a "demanding standard." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). Finally, in *Bivens* suits, there is no such thing as "vicarious liability." *Iqbal*, 556 U.S. at 676. Thus, absent factual allegations plausibly suggesting each defendant's *direct involvement* in a constitutional violation, that defendant must be dismissed from the suit. *Id.*

    **1.   The complaint fails to allege Defendant Iatarola's personal participation.**

    The complaint contains no specific allegation against Defendant Iatarola at all. Other than listing her title as a supervisory special agent, Comp. ¶ 7, the complaint lumps her together with the other two individual defendants only in reciting the elements of the various claims and baldly stating that a constitutional violation occurred. *See id.* ¶ 70 ("The actions of Defendants Lao, Ro, Iatarola, Does and Roes violated [Plaintiff's] clearly established right to be free from malicious prosecution and the fabrication of evidence under the Fourth and Fifth Amendments."); *see also id.* ¶¶ 73, 76-79, 81, 84-85, 87-88, 90-91. Legal conclusions couched as factual allegations do not suffice. *Iqbal*, 556 U.S. at 678. As the Ninth Circuit has explained, "to be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Further, the Ninth Circuit requires courts to "analyze the acts of each individual defendant in its qualified immunity analysis." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th

Cir. 2000). When it comes to Defendant Iatarola, the complaint does not even try to make out a case against her, other than to allege that she was a supervisor. The Supreme Court, the Ninth Circuit, and this Court have all made clear that suing a supervisor based solely on one's status as a supervisor cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, *his or her title notwithstanding*, is only liable for his or her own misconduct.") (emphasis added); *Chavez v. United States*, 683 F.3d 1102, 1110-11 (9th Cir. 2012) (rejecting attempt to tie supervisory defendants to alleged injuries by simply citing their titles without explaining how each defendant was aware of alleged misconduct); *Lyons v. State*, No. 10-707, 2014 U.S. Dist. LEXIS 127390, *9 (D. Nev. Sept. 11, 2014) (Mahan, J.) (allegation that defendant was in supervisory role when plaintiff was injured is insufficient withstand motion to dismiss). Having failed to allege her personal participation in any misconduct whatsoever, Defendant Iatarola is entitled to qualified immunity on all claims brought against her.

> **2.   This Court should dismiss Counts One and Four for failing to allege a clearly established constitutional violation.[8]**

To state a federal malicious prosecution claim, a plaintiff must plead facts sufficient to plausible show "that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citation omitted). Where the initiation of prosecution causes one to be detained, the Fourth Amendment is implicated. *See Manuel v City of Joliet*, 137 S. Ct. 911, 914-15 (2017). The Supreme Court recently summarized the probable cause standard:

> To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar.

---

[8] As explained previously, Counts One and Four both challenge Plaintiff's detention pursuant to criminal process and thus, they collapse into a single tort for malicious prosecution. *See supra* at 5; *see also Wallace*, 549 U.S. at 389-90.

*Wesby*, 138 S. Ct. at 586 (internal quotations and citations omitted); *see also West v. City of Mesa*, 708 F. App'x 288, 293 (9th Cir. 2017) (probable cause requires only a "fair probability" that a crime has occurred). Even where probable cause is found to be lacking, an officer is still entitled to qualified immunity under the second prong of the analysis if he or she "reasonably but mistakenly conclude[d] that probable cause [wa]s present." *Id.* at 591 (citation omitted). Finally, "the mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

In the companion motion to dismiss filed this same date, the United States argued that based on the facts alleged (1) the grand jury's indictment created a presumption of probable cause that Plaintiff failed to rebut; and (2) probable cause existed to charge Plaintiff. *See* U.S. Motion to Dismiss, at 16-19 (ECF 12). The individual defendants incorporate those arguments herein, as they are sufficient to dispose of Counts One and Four as well. *See West*, 708 F. App'x at 293 ("The existence of probable cause to prosecute is a complete defense to . . . federal claims of malicious prosecution.") (citation omitted); *see also Awabdy*, 368 F.3d at 1066 (incorporating state common law elements for malicious prosecution into federal claim). Further, to overcome the qualified-immunity defense, Plaintiff must not only allege facts sufficient to plausibly show that probable cause was lacking under prong one of the qualified-immunity analysis, he must also allege facts sufficient to plausibly show that *every reasonable officer* would have found no probable cause on the facts alleged under prong two of the analysis. *Wesby*, 138 S. Ct. at 589. The complaint here does not even come close to making the necessary showing.[9]

Having failed to allege a constitutional violation, let alone a clearly established one, Defendants Ro, Lao, and Iatarola are entitled to qualified immunity on Counts One and Four.

---

[9] Count One also purports to allege an evidence fabrication claim. Compl. ¶ 70. But as explained in the motion to dismiss filed by the United States, notwithstanding the allegations of evidence fabrication, the facts to which Plaintiff *did admit* in the criminal case were more than sufficient to show that a reasonable officer could have believed that probable cause existed. *See* U.S. Motion to Dismiss, at 17-18 (ECF 12). The individual defendants incorporate those arguments herein and that is sufficient to defeat the evidence fabrication portion of Count One as well.

**3.** **This Court should dismiss Count Two for failing to allege a clearly established constitutional violation.**

Although not entirely clear, Count Two purports to allege a selective enforcement and prosecution claim in violation of the equal protection clause.[10] "The first step in equal protection analysis is to identify the [defendants'] classification of groups." *Freeman*, 68 F.3d at 1187 (citation omitted). "The next step . . . [is] to determine the level of scrutiny." *Id.* (citation omitted). Here, Plaintiff alleges he was discriminated on the basis of his race and national origin, Compl. ¶ 74, which is subject to strict scrutiny. *Freeman*, 68 F.3d at 1187. He also contends he was discriminated on the basis of his status as a temporary resident alien, Compl. ¶ 72, which is subject to rational-basis scrutiny. *See Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002); *see also LULAC v. Bredesen*, 500 F.3d 523, 533 (6th Cir. 2007) ("This case presents no compelling reason why the special protection afforded by suspect-class recognition should be extended to lawful temporary resident aliens. Because the instant classification does not result in discriminatory harm to members of a suspect class, it is subject only to rational basis scrutiny."); *LeClerc v. Webb*, 419 F.3d 405, 420 (5th Cir. 2005) ("[R]ational basis review must be the appropriate standard for evaluating state law classifications affecting nonimmigrant aliens.").

Once the level of scrutiny is determined, "it is necessary to identify a similarly situated class against which the plaintiff's class can be compared." *Freeman*, 68 F.3d at 1187 (internal

---

[10] Count Two also purports to allege another evidence fabrication claim, but never explains how this claim differs from Count One's evidence fabrication claim. This Court should thus dismiss this part of Count Two as duplicative. *See Cuc Dang v. Sutter's Place, Inc.*, No. 10-2181, 2010 U.S. Dist. LEXIS 124875, *16-17 (N.D. Cal. Nov. 24, 2010); *Golden v. West Corp.*, No. 11-182, 2012 U.S. Dist. LEXIS 15262, *9 (E.D. Wash. Feb. 8, 2012) (both dismissing duplicative claims based on the same allegations). Count Two also purports to bring its claims under the Fourteenth Amendment, but the required State action is lacking and that is another basis for dismissal. *See District of Columbia v. Carter*, 409 U.S. 418, 423 (1973); *United States v. Navarro*, 800 F.3d 1104, 1112 n.6 (9th Cir. 2015). Finally, Count Two purports to challenge the failure to turn over exculpatory evidence. Compl. ¶ 75. But while the complaint does contain vague references to so-called "exculpatory" evidence, *id.* ¶ 54-56, it never alleges what the evidence was, who knew of it and when, or how it was exculpatory. This plainly does not suffice. In any event, the alleged withholding of exculpatory evidence does not overcome the presumption of probable cause because there is no duty to present such evidence to the grand jury. *United States v. Bingham*, 653 F.3d 983, 999 (9th Cir. 2011); *United States v. Navarro*, 608 F.3d 529, 537 (9th Cir. 2010); *Friedman*, 2019 U.S. Dist. LEXIS 2476, at *11.

quotations and citation omitted); *see also Armstrong*, 517 U.S. at 469, 470 (selective prosecution claim requires "credible showing" that "similarly situated defendants of other races could have been prosecuted, but were not"); *United States v. Sutcliffe*, 505 F.3d 944, 954 (9th Cir. 2007) (selective prosecution claim requires showing that "other similarly situated individuals have not been prosecuted"); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 920 (9th Cir. 2012) (en banc) (selective enforcement claim requires showing that similarly situated individuals were treated differently). This standard is "particularly demanding." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999). The plaintiff must allege some anecdotal or statistical evidence showing the disparate treatment. *Lacey*, 693 F.3d at 920.

Here, Plaintiff's equal protection claim fails because he does not allege that similarly situated individuals were treated differently. Nor could he, given that he acknowledged in the criminal case that the investigation targeted 20 individuals, including U.S. citizens, and charged three additional individuals. *See* Reply to Government's Response to Motion to Dismiss, *United States v. Bouari*, No. 16-cr-32 (D. Nev.) (ECF 106, at 9:18-19) ("This is borne out by the fact that out of the more than 20 people who the agents targeted, only 4 were ultimately indicted."). Plaintiff does not allege that these other individuals were also of Chilean and Lebanese descent, or that they were also temporary resident aliens. And having made no attempt to allege that individuals of a different race, ethnicity, or alienage status were suspected of money laundering, but not investigated (or were investigated, but not prosecuted), Plaintiff's selective enforcement and prosecution claim must fail. Moreover, that individuals of different classifications were in fact investigated and indicted forecloses any equal protection claim altogether.

In addition to failing to include any comparative allegations, Plaintiff has not plausibly alleged that his prosecution was selectively motivated, in any event. Indeed, the allegation that his prosecution violated the equal protection clause is a legal conclusion that is not entitled to an assumption of truth. *See* Compl. ¶ 73; *see also Iqbal*, 556 U.S. at 678. The bare allegation that his prosecution was based on race, ethnicity, and alienage status is conclusory and should also not be credited. *See* Compl. ¶ 74; *see also Sanders*, 504 F.3d at 910. Instead, Plaintiff must allege supporting factual averments sufficient to plausibly conclude that his prosecution was based on

some impermissible classification. *See Iqbal*, 556 U.S. at 678. Here, Plaintiff rests his entire claim on a single alleged statement that the investigation sought to "kick his ass back to where he came from." Compl. ¶ 56. Plaintiff never attributes that statement to any single defendant. That is because none of them said it. Plaintiff acknowledged in the criminal case that this statement was in fact made by the confidential human source. *See* Motion to Dismiss Indictment, *United States v. Bouari*, No. 16-cr-32 (D. Nev.) (ECF 89, at 2) ("Confidential Human Source: . . . his brother is here on a visa. We can kick his ass back to where he came from."). Courts have recognized that a single alleged "slur" by law enforcement in the course of an arrest is insufficient to state an equal protection claim for selective prosecution. *See, e.g.*, *Orellana v. Cty. of Los Angeles*, No. 12-1944, 2013 U.S. Dist. LEXIS 198186, *44-45 (C.D. Cal. Apr. 29, 2013) (citing *Oliver v. Cuttler*, 968 F. Supp. 83, 88 (E.D.N.Y. 1997)). If that is the case, a single off-the-cuff statement *by an informant* is certainly no basis to state an equal protection claim *against law enforcement*, particularly where the statement makes no reference to Plaintiff's race or ethnicity. Indeed, this investigation had gone on for two years with more than $500,000 laundered. More than 20 people were targeted and four indicted. An off-the-cuff statement by an informant in no way plausibly alleges that this two-year investigation was brought *solely* because Plaintiff was of Lebanese and Chilean descent or because he was a temporary resident alien.[11]

Having failed to allege an equal protection violation, let alone a clearly established one, Defendants Ro, Lao, and Iatarola are entitled to qualified immunity on Count Two.

---

[11] Because temporary alien status classifications are subject to rational-basis review, they are deemed valid unless "wholly irrational." *Taniguchi*, 303 F.3d at 957 (citation omitted). "If there is a facially legitimate and bona fide reason for enacting a discriminatory rule, the [classification] must be upheld." *Id.* (internal quotation and citation omitted). "Furthermore, it is irrelevant whether or not the justification proffered . . . was in fact the reason that led to the legislative classification in the first instance." *Id.* (citation omitted). Here, while the individual defendants adamantly deny that they initiated an investigation and prosecution based solely on Plaintiff's status as a temporary resident alien, they are unaware of any case law clearly establishing that marshaling resources to investigate and prosecute temporary resident aliens over U.S. citizens or permanent resident aliens violates the equal protection clause. Absent any case law even remotely on point, they are entitled to qualified immunity on this part of the equal protection claim. *See S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1015-16 (9th Cir. 2017).

4. **This Court should dismiss Count Three for failing to allege a clearly established constitutional violation.**

Count Three alleges that Defendants Ro, Lao, and Iatarola searched his person and belongings without probable cause in violation of the Fourth Amendment. The complaint contains one allegation directed at this claim, stating that "Defendants caused the search and/or seizure without probable cause of the personal belongings, including the computers, other electronic devices, and private papers, of [Plaintiff]." Compl. ¶ 64. But the complaint never explains who searched what and when, sufficient for Defendants to respond to this allegation. Assuming Plaintiff has personal knowledge of the alleged search – as he must, otherwise the allegation is based on pure speculation – he should be able to provide some factual content in support. Having failed to do so, the claim must be dismissed. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 555 (2007) (Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim . . . to give the defendant fair notice of what the claim is and the grounds upon which it rests.") (citation omitted); *see also Starr*, 652 F.3d at 1216.

Assuming that Plaintiff is challenging the search and seizure of his person and belongings incident to his arrest at the airport, the Ninth Circuit has "held that personal items seized and examined by police during searches incident to a lawful arrest are not protected from further warrantless searches by police." *Hell's Angels Motorcycle Corp. v. McKinley*, 360 F.3d 930, 933-34 (9th Cir. 2004) (collecting cases). Thus, as long as this Court concludes that the initial detention of Plaintiff was lawful, the subsequent search of his person and belongings incident to his arrest does not state an independent constitutional violation, and certainly not a clearly established one. This Court should accordingly dismiss Count Three.

## V. CONCLUSION

Based on the foregoing, this Court should grant the motion to dismiss and dismiss the complaint in its entirety against Defendants Ro, Lao, and Iatarola.

Respectfully submitted this 2nd day of October 2020.

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

22

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

ANDREA W. MCCARTHY
Senior Trial Counsel
Torts Branch, Civil Division

_s/ Siegmund F. Fuchs_
SIEGMUND F. FUCHS
Senior Trial Attorney
Torts Branch, Civil Division

Attorneys for Defendants

1

## **PROOF OF SERVICE**

2

    I, Siegmund F. Fuchs, certify that the following individual was served with a copy of the

3

**MOTION TO DISMISS** on the date and by the identified method of service below:

4

**ELECTRONIC CASE FILING:**

5

Benjamin C. Durham, Esq.
601 South 10th Street, Suite 101

6

Las Vegas, Nevada  89101
702-631-6111

7

bdurham@vegasdefense.com

8

Dated this 2nd day of October 2020.

9

10

         */s/ Siegmund F. Fuchs*
         SIEGMUND F. FUCHS

11

         Senior Trial Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28